596

CLYDE WILLIAMS, Plaintiff-Appellant, *v.* CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY, Defendant-Appellee.

(No. 70-193;

Fifth District—August 3, 1973.

*Rehearing denied September 4, 1973.*

Hillebrand, Cook & Stiehl, of East St. Louis, (Robert J. Hillebrand, of counsel,) for appellant.

Burroughs, Simpson & Wilson, of Edwardsville, (Larry E. Hepler, of counsel,) for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Madison County, following the granting of defendant-appellee's motion for summary judgment in an action brought under the Federal Employees Liability Act to recover injuries resulting from the defendant's alleged negligence.

The plaintiff alleged that while working for the defendant he was injured because of the defendant's negligence. The defendant answered denying that the plaintiff was employed by the defendant, denying that the plaintiff was injured, and denying that the defendant was negligent. Subsequently, the defendant filed its motion for summary judgment urging that the plaintiff was not employed by the defendant at the time of alleged injury and was thus not entitled to bring suit pursuant to F.E.L.A.

This motion was granted and judgment for the defendant was entered on the motion for summary judgment.

The facts of this case, as gleaned from the affidavit, depositions, and pleadings, indicate that the plaintiff at the time of the injury had been employed by the Missouri Pacific Truck Lines. He was employed as a truck driver doing work on the defendant's ramp at Mitchell, Illinois. He operated a "ramp tractor" used to load and unload "piggy-back" trailers on and off railroad cars. On the date of the injury, as he was preparing to get into the tractor on the driver's side, he stepped up onto the running board with his right foot, which slipped out from under him. As he fell, his kneecap struck the running board which was wet with gas that had spilled from the gas tank, which was located above and in close proximity to the running board.

The plaintiff was hired by the Missouri Pacific Truck Lines. He received his wages from the truck line. He worked under the provisions of a contract between the truck line and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 600, of which the plaintiff was a member. He was covered by the Social Security Act and the Fair Labor Standards Act and was not covered by the Railroad Retirement System. The "ramp tractor" was owned by the truck line. Pursuant to contract, the service work on the tractors was done at a local service station and billed to the defendant.

The plaintiff received his orders from the truck line's dispatcher. None of the defendant's employees ever told the plaintiff what to do or how to do it. The plaintiff did testify in his deposition "I suppose, if the yardmaster or someone did tell me something on how to do it; probably better to do, let's put it that way, but there's never been anyone."

Mr. Lloyd Ledesky, the assistant dispatcher for the truck line, substantiated that the defendant's yardmaster never directed any truck line personnel and that the yardmaster never told Mr. Ledesky which trailers must go on and off. The only time that defendant's employees were in the truck line ramping area is when there is trouble with the stanchions, which hold the trailers on the railroad car, and the railroad employees would have to take a torch and cut the stanchion. No employee of the defendant had any responsibility for unloading the trailers nor did any employee directly supervise the work on any basis. The authority to hire and fire employees rested with the truck line.

Upon occasion officials from the truck line and the defendant would visit the ramp site and discuss the operations with the dispatcher. Mr. Ledesky testified that he felt that these officials could indicate to him something could be done differently and then the officials of the truck

line would discuss the matter considering the suggestions and then do it to their own satisfaction.

The work at the Mitchell ramp was performed pursuant to a contract between the defendant and the truck line dated January 2, 1968. The contract provided, among other things, that the defendant would pay based on an hourly rate for the workers at the ramp site, that the workers were to be the sole employees of the truck line which was to remain an independent contractor. It also provided that the truck line would operate in the area as an "agent" for the defendant.

The truck line was to collect and pay over to the defendant all charges on freight and furnish the defendant with receipts. The freight not paid for was to be returned to the defendant. Any violations of the collection provisions subjected the truck line to liability to the defendant for the freight charges which the defendant could deduct from the amount due to the truck line.

The contract also provided that the truck line could not assign or sublet any interest in the contract without the defendant's written approval. No such limitation existed for the defendant, who could terminate the contract at any time it felt the truck line's service was unsatisfactory. The truck line could terminate the contract on 30 days notice.

The truck line also agreed in the contract to indemnify the defendant for any type of claims and obtain insurance to cover all liabilities for claims arising from employer's liabilities or workmen's compensation laws.

The basic equipment used at the ramping operation was the ramp tractor, an electric "gun" or wrench, a breaking bar and a small crank. The ramp tractor was owned by the truck line and maintained by the defendant. The ownership of the "guns" or wrenches is uncertain, the breaking bar and small cranks were devised on the job. The breaking bars were fabricated at a shop of the truck line in Dupo, Illinois.

The defendant supported its motion for summary judgment with the affidavit of Mr. A.M. Petrillo, general manager of safety and employee relations for the truck line, the plaintiff's deposition, Mr. Ledesky's deposition, and a copy of the contract between the defendant and the truck line. The plaintiff did not file counter-affidavits or offer evidence in opposition to defendant's motion.

■■ Illinois law is quite clear that the purpose of summary judgment proceedings is not to try facts, but to determine whether a genuine issue exists as to any material fact which would require a trial. (*Commercial Products Corp. v. Briegel* (1968), 101 Ill.App.2d 156, 242 N.E.2d 317; *Jones v. Lukas* (1970), 122 Ill.App.2d 162, 258 N.E.2d 147.) If pleadings, discovery depositions and exhibits present a genuine issue as to any

material fact, summary judgment. should not be granted. (*Watkins v. Lewis* (1968), 96 Ill.App.2d 182, 237 N.E.2d 830; *Morris v. Anderson* (1970), 121 Ill.App.2d 169, 259 N.E.2d 601.) If, on the other hand, the record shows there is no triable issue of fact or only legal issues need to be resolved, summary judgment will be granted. *Galiher v. Spates* (1970), 129 Ill.App.2d 204, 262 N.E.2d 626.

The determinative issue which faced the trial court and is presented here for review is whether there was a genuine issue as to the plaintiff's employment status under F.E.L.A. Whether one is an employee of the railroad under this chapter is normally a question of fact to be determined by the facts of each case, *but* if reasonable men could not reach differing conclusions on that issue, the question should *not* be submitted to the jury. (*Valentine v. South Coast Corp.*, 218 F.Supp. 148 (E.D. La. 1963) aff'd, 334 F.2d 244.) In light of recent decisions presenting the same issue and nearly identical factual situations, and the interpretation given the term "employee" within the meaning of the F.E.L.A., we believe reasonable men could not reach differing conclusions on this issue of employment.

The case which most clearly supports our conclusion and presents a nearly identical fact situation is *Fawcett v. Missouri Pacific R.R. Co.* (W.D. La. 1963), 242 F.Supp. 675, aff'd (5th Cir. 1965), 347 F.2d 233, *cert. denied,* 382 U.S. 907. It involved a suit by the plaintiff under F.E.L.A. against the Missouri Pacific Railroad for the death of her hus-band.

Defendant moved for summary judgment on the basis that the deceased was not its employee at the time he was killed. Thus, the sole question presented for review was whether a genuine issue of fact existed with respect to this contention. A hearing was held to afford petitioners an opportunity to prove the existence of a factual dispute. The record revealed that at the time of his death, the deceased was not, nor was he ever, in the employ of the defendant. His regular employment was with the Missouri Pacific Truck Lines, which had a contract with defendant under which it transported freight over the highways rather than by rail. The court found, at 677, that:

> "At the time of his death (1) Fawcett was *not* hired by the railroad; (2) he was *not* on the railroad payroll; (3) he was *not,* in fact, paid by the railroad; (4) he was *not* subject to discharge by the railroad; (5) he was upon the railroad premises, but these premises were the subject of a lease agreement between the railroad and Fawcett's employer; (6) he was *not* using the railroad's tools; (7) the railroad furnished no material; (8) he was *not* doing work the railroad was required to do. His work consisted of load-

ing and unloading which the consignor would otherwise do, in assisting in the transport of freight by highway transport for which the railroad was not licensed to do; (9) none of the railroad's employees were present at the time Fawcett met his death; and (10) none of the railroad employees had any supervision of Fawcett or his supervisors."

"Considering the pleadings, the affidavits, the exhibits and the testimony most favorable to the plaintiff", the court stated at 678, "we conclude that the deceased was not an employee of the defendant at the time he met his death. To my fallible judgment, this is so clear that no reasonable man could differ with this conclusion. Therefore, summary judgment should be granted."

■■ The record in the case at bar reveals that Williams was not, nor was he ever in the employ of the defendant. His regular employment was also with the Missouri Pacific Truck Lines which had a contract with defendant under which it loaded and unloaded "piggyback" trailers from defendant's railroad cars. At the time of his injury Williams was *not* hired by the railroad; he was *not* on the railroad payroll; he was *not*, in fact paid by the railroad; he was *not* subject to discharge by the railroad; the only tools used were the tractor supplied by the truck lines, breaking bar and crank devised by the men on the job, and electric "guns" and speed wrenches of uncertain origin; the railroad furnished no other material except a trailer used by the truck lines as an office; he was *not* doing work the railroad was required to do, but work the truck lines was required to do pursuant to its contract with the defendant. His work consisted of loading and unloading "piggyback" trailers from defendant's railroad cars pursuant to the contract; none of the railroad's employees were present at the time Williams injured his knee; and none of the railroad employees had any supervision of Williams or his supervisors. In light of this evidence and the court's holding in *Fawcett,* it is clear that no reasonable man could differ with the conclusion that Williams was not an employee of the railroad. See also *Turpin v. Chicago, Burlington & Quincy R.R. Co.* (Mo. 1966), 403 S.W.2d 233 and *Phelps v. Missouri-Kansas-Texas R.R. Co.* (Mo. 1968), 438 S.W.2d 181.

■■ Of equal importance in supporting our conclusion are those cases which have indicated how the terms "employee" and "employed" are used in § 51 of the F.E.L.A. The United States Supreme Court has held that this section does not use these terms in any special sense, but does use them to describe the conventional relation of employer and employee, so that the familiar general legal problems as to whose employee or servant a worker is at a given time present themselves as matter of Federal law under said Act. (*Baker v. Texas & Pacific Ry. Co.,* 359 U.S.

227; *Hull v. Philadelphia & Reading Ry. Co.*, 252 U.S. 475.) And where a question arises as to what the real relationship between parties is, the employer will, in the final analysis, be the one whose work is being performed and who has the power of control over the work and the employee. (*Downs v. Baltimore & Ohio R. Co.*, 345 Ill.App. 118, 102 N.E.2d 537.) Within the purview of the F.E.L.A., workmen employed primarily by someone else, an independent contractor, can only be considered employees of the railroad if they were under the direction, supervision, and/or control of the railroad or its employees; and, where the railroad retains no control over the details of the work, they do not become employees of the railroad. (*Fawcett, supra; Chicago, Rock Island & Pacific Ry. Co. v. Bond*, 240 U.S. 449; see also *Steinman v. Pennsylvania R.R. Co.* (3d Cir. 1932), 54 F.2d 1052.) As we have already indicated, the pleadings, depositions, affidavit and exhibits clearly show that at the time of his injury, Williams was doing work required of the truck lines pursuant to its contract with the defendant. And furthermore the evidence shows that Williams was under the direct control and supervision of the dispatcher Ledesky, also an employee of the truck lines.

■■■ The authorities cited by the appellant do not support his argument against summary judgment. In each of the cases cited by the appellant there was evidence of direct control and supervision of the petitioners and their work by the railroad. Contrary evidence was presented by petitioners such that material issues of fact were presented. The only indication of railroad supervision in the cases at bar was testimony by deposition of Williams and Ledesky to the effect that, if someone from the railroad told them to do something, they would do it. Ledesky's testimony showed that normally any directions from the railroad took the form of discussions as to how to do the work better. However, this has been shown to have no effect on an existing independent contractor relationship. In *Orange v. Pitcairn*, 280 Ill.App. 566, the court stated at 572 that:

> "[Where the railroad does] not retain the right to direct the method of work, or the manner in which it should be done, but only the authority to supervise, to the extent of assuring its performance in accord with the covenants of the contract * * * the relation thus created is that of independent contractor and not master and servant."

And according to the court in *Okolinsky v. Philadelphia Bethlehem & New England R.R. Co.* (E.D. Pa. 1959), 179 F.Supp. 801, appeal dismissed 282 F.2d 70, at 805:

> "The mere fact that the injured person may have received direc-

tions from the railroad with respect to some aspects of his work will not constitute him a railroad employee."

■■ We have concluded that the defendant contracted with the truck lines to load and unload "piggyback" trailers as an independent contractor, that nothing was done to impair that relationship, and that plaintiff remained solely the employee of the truck lines. We further hold that on this evidence reasonable minds could not differ and that the trial court properly sustained defendant's motion for summary judgment.

The judgment of the trial court is affirmed.

CREBS and JONES, JJ., concur.