FRED EVANS, Petitioner-Appellant, *v.* BOARD OF EDUCATION OF MURPHYSBORO COMMUNITY UNIT SCHOOL DISTRICT *et al.*, Respondents-Appellees.

Fifth District   No. 79-320

Opinion filed June 6, 1980.

Drach, Terrell & Deffenbaugh, of Springfield, for appellant.

Wolff, Jones, Lawder & Elmore, of Murphysboro, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:
Petitioner, Fred Evans, filed a petition for writ of *mandamus* and a

complaint for declaratory judgment in the Circuit Court of Jackson County against respondents, Board of Education of Murphysboro Community Unit School District No. 186 (hereinafter referred to as District 186) and Executive Board of Jackson-Union-Perry Tri-County Special Education District (hereinafter referred to as Tri-County Special Education District). Petitioner, who had been honorably dismissed from his position as a school psychologist by Carbondale Community High School District No. 165 (hereinafter referred to as District 165), in his suit sought reinstatement to his former position and damages in the amount of lost wages.

Following a bench trial, a judgment order was entered in favor of respondents. Petitioner appeals this decision, contending that: (1) the trial court's finding that he was not employed by Tri-County Special Education District is against the manifest weight of the evidence; (2) District 165 had no authority to dismiss him; and (3) assuming that he was employed by District 165, he was entitled to a similar position held by a nontenured employee of Tri-County Special Education District.

The evidence at trial indicates that in 1971, pursuant to section 10—22.31 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 10—22.31), 25 school districts in Jackson, Union and Perry counties formed the Tri-County Special Education District. Such special education district was formed for the purpose of alleviating the financial burden borne by individual districts with respect to furnishing special education services by pooling special education resources among the participating districts. District 186 was designated as the administrative district to serve as legal agent for the special education district. On September 8, 1971, shortly after its formation, the executive board of the Tri-County Special Education District voted to employ all of the special education teachers whose names appeared on a list submitted to the board. Petitioner was among those originally hired. The board of education of District 165 passed a resolution authorizing the assignment of its special education teachers to the special education district. The resolution states in part: "1. Operating districts would be responsible for hiring teachers, collection of tuition for out-of-district students, and supervision by building principals and local superintendents of the classes within their districts. 2. Teachers in the operating districts would be on the salary schedule of that operating district although employed by the Board of Education of the administrative district."

Petitioner testified that he holds a school service personnel certificate issued by the Illinois State Board of Education, certifying him as a school psychologist. It was in this capacity that he began working for District 165 in 1967. A few years later he was asked by Richard Smith, coordinator of special education at Carbondale High School, if he would move to the central special education facility located in Carbondale. Petitioner

accepted the new assignment. He was informed by Mr. Smith that his salary would no longer be paid by District 165 but, instead, by the Tri-County Cooperative, the predecessor of the Tri-County Special Education District. From 1971 until his dismissal at the end of the 1976-77 school term, petitioner's salary was paid by District 186, acting as the administrative district for the special education district. Petitioner's exhibit 3 is an Internal Revenue Service wage and tax statement which designates District 186 as his employer, and petitioner's exhibits 4 and 5 are statements of employee earnings and payroll deductions issued to petitioner by District 186. The latter two statements, which cover random pay periods in the years 1977 and 1973, respectively, are based on a salary schedule used by District 165. Although petitioner signed employment contracts with District 165 in 1966 and 1967, he signed no other employment contracts with either District 165 or Tri-County Special Education District prior to his dismissal.

Petitioner gave the following description of the activities and responsibilities which his alleged employment with Tri-County Special Education District entailed. He screened and tested students in feeder schools to ascertain which students, if any, would be in need of special education services during their stay in high school. The feeder schools were elementary and junior high schools which sent their graduates to District 165 to attend high school. He also tested children in a Carbondale nursing home, and those children who were classified as trainable were sent to school in Murphysboro, which was a participating district in the special education district. Another task petitioner performed was the training of interns from the special education district. He participated in two or three staffings which took place in the special education district's central office in Murphysboro. The evidence indicated that a staffing is the meeting of all the professional employees and administrative staff who are responsible for providing the special needs of a student who is having difficulty in a regular program. Petitioner referred students to another psychologist in the special education district, and students were referred to him by such psychologist. He mentioned that he prepared various reports which were submitted to Lyle Sparks, director of the Tri-County Special Education District.

In outlining the chain of authority associated with his position, petitioner explained that he received instructions pertaining to special education from Mr. Sparks' office. However, these instructions were not relayed to him directly from Mr. Sparks but reached him through Noble Thomas, who is the special education coordinator for District 165. Although his special education instructions came from the special education district, petitioner stated that he reported to the building principal at whatever school he presently was working. He was instructed

to report to the local building principal by Harvey Gardener, a co-director of Tri-County Special Education District's predecessor.

In March of 1977, petitioner filed a grievance with District 165 protesting the level of his salary. He testified that he filed the grievance with District 165 on the advice of the Illinois Education Association. Later that month he received notice of his honorable termination from District 165. Subsequent to the notification he informed Tri-County Special Education District that he wished to have the position held by Allen Anderson. Mr. Anderson was an untenured school psychologist employed by the district. This request was refused by the executive board in a letter sent to petitioner.

Lyle Sparks testified on behalf of respondents. He stated that petitioner had never been employed by the central office of the Tri-County Special Education District and that, as a consequence, he was not entitled to the position held by Anderson. However, he did say that petitioner was originally hired by the executive board. When asked to distinguish between employees of the central office and employees of the local school boards, he responded that Tri-County central office personnel are those persons who are under the policies and direction of the Tri-County Executive Board and that personnel under the operating districts are under the policies, direction, supervision of the local school board. Mr. Sparks went on to say that only central office personnel are paid by District 186 as administrative district for the special education district, while operating district personnel are paid by the local districts. When questioned about personnel reimbursement claims, Mr. Sparks replied that District 186 makes such claims only for central office employees. On cross-examination, he stated that such claims for petitioner's services had been made by District 186 from 1971 until petitioner's dismissal. Mr. Sparks also described a grant program whereby the State would pay the special education district $1,000 for every special education teacher in the district. Under the program, the money was to be used for building a central office for the district. To obtain this grant money and other Federal monies, teachers in the operating districts, including petitioner, were assigned to the executive board. He pointed out, however, that the building grant program was separate and distinct from the personnel reimbursement claims. In a dispute with the Illinois Office of Education, he admitted that District 186 claimed petitioner as an employee.

Mr. Sparks maintained that he interacted with petitioner on a personal and professional basis and not in a supervisory capacity, since plaintiff was not employed by the central office. When questioned about the authority exercised by a building principal, he agreed that executive board personnel must adhere to rules and policies concerning the

operation of the building; however, he noted that a principal's authority does not extend to matters pertaining to the delivery of special education services *per se.*

Among the findings of fact contained in its judgment order denying petitioner relief, the trial court specifically found that petitioner was not an employee of either Tri-County Special Education District or District 186. Petitioner contends on appeal that this finding was against the manifest weight of the evidence. We agree.

There is no dispute that petitioner was officially hired by the executive board of Tri-County Special Education District when it voted to employ petitioner and the other special education teachers whose names were submitted to it. Nor is there any dispute that the special education district benefited from petitioner's employment by receiving grant money and personnel reimbursements from other districts for his services. Moreover, in a dispute with the State, the district held itself out to be petitioner's employer. Finally, many services provided by petitioner benefited the entire district, not just District 165. In particular, petitioner participated in staffings in the central office, referred children to other psychologists in the special education district and received such referrals, and trained interns for employment within the special education district. A record which indicates that petitioner was officially hired by the executive board, that the special education district benefited from his status as employee and that the performance of his duties benefited the district as a whole cannot support a finding that he was not an employee of the special education district.

Respondents contend that despite petitioner's selection by the executive board, he was an operating district employee and not an employee of the special education district because he was not a member of the district's central staff. Mr. Sparks testified that only central staff employees are under the direction of the executive board; however, the executive board's authority over petitioner is implicit in the fact that it employed him at the outset of the formation of the special education district. Further, Mr. Sparks testified that District 186 pays the salaries of central office personnel. Petitioner's wage and tax statements introduced into evidence established that District 186, legal agent for the special education district, paid his salary. Finally, Mr. Sparks related that District 186 makes personnel reimbursement claims only for services of the central office employees. The evidence indicates that District 186 made personnel reimbursement claims for petitioner's service from 1971 until his dismissal. The criteria enumerated by Mr. Sparks for distinguishing a central office employee from an operating district employee, including District 165, amply bear out that petitioner was a central office employee.

This court has had occasion to consider the question of whether a

party was an employee under the Federal Employers' Liability Act and has stated: "Of equal importance in supporting our conclusion are those cases which have indicated how the terms 'employee' and 'employed' are used in §51 of the F.E.L.A. The United States Supreme Court has held that this section does not use these terms in any special sense, but does use them to describe the conventional relation of employer and employee, so that the familiar general legal problems as to whose employee or servant a worker is at a given time present themselves as matters of Federal law under said Act. [Citations.] And where a question arises as to what the real relationship between parties is, the employer will, in the final analysis, be the one whose work is being performed and who has the power of control over the work and the employee. [Citation.]" (*Williams v. Chicago & Eastern Illinois R.R. Co.* (1973), 13 Ill. App. 3d 596, 601-02, 300 N.E.2d 766, 770-71.) Similarly, our supreme court in *Clark v. Industrial Com.* (1973), 54 Ill. 2d 311, 297 N.E.2d 154, stated that whether a person is an employee or an independent contractor depends upon an analysis of all the facts and circumstances of each particular case. The court went on to say that no single facet of the relationship is determinative but that, quoting from its 1960 opinion in *Coontz v. Industrial Com.* (1960), 19 Ill. 2d 574, 169 N.E.2d 94, " '* * * the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and the furnishing of tools, materials or equipment have evidentiary value and must be considered. [Citation.] Of these factors, the right to control the work is perhaps the most important single factor in determining the relation [citation], inasmuch as an employee is at all times subject to the control and supervision of his employer, whereas an independent contractor represents the will of the owner only as to the result and not as to the means by which it was accomplished.' " 54 Ill. 2d 311, 314-15, 297 N.E.2d 154, 156.

The rationale of these cases is, in our opinion, determinative of the case at bar. The evidence indicates that it was the executive board of the special education district that had control of the hiring of petitioner, the manner in which his work was done, and the method of his payment, having designated District 186 as the paying agent. Further, since it hired petitioner, it had control of the skill required in the work to be done and furnished special staffing instruction. That petitioner was subject to the control and supervision of the special education district is borne out by the fact that he was required to accept referrals of students from outside District 165 and to make such referrals to psychologists outside the district. Also, when one considers the statement in *Williams v. Chicago & Eastern Illinois R.R. Co.* (1973), 13 Ill. App. 3d 596, 300 N.E.2d 766, 770-71, that a determination must be made of whose work is being done, it cannot be said that District 165's work was being done when petitioner

trained interns for the special education district, when he filed reports with such district and when he accepted referrals of students to him by the special education district. Such activities would have not been proper for an employee of District 165.

In further support of their claim that petitioner was an operating district employee, respondents point to the grievance filed by petitioner in District 165. Respondents reason that if he were a special education district employee, petitioner would have filed his claim with the central office. This argument does not take into account paragraph 2 of the resolution passed by the board of education of District 165 which states: "2. Teachers in the operating districts would be on the salary schedule of that operating district although employed by the Board of Education of the administrative district." Moreover, petitioner's office was in Carbondale, which is located in District 165. Because of this fact and since his salary was based on the schedule used by District 165, it would have been logical for petitioner to assume that this district was the proper place to file his grievance. Additionally, petitioner filed the grievance based on advice of the Illinois Education Association. We find that the filing of the grievance with District 165 in no way affected petitioner's employment status with the special education district and that it is not indicative of a belief on his part that he was a District 165 employee.

For the foregoing reasons, we find that petitioner was an employee of the Tri-County Special Education District, and we hold that the trial court's finding to the contrary is against the manifest weight of the evidence.

Petitioner next asserts that District 165 had no authority to dismiss him because he was an employee of Tri-County Special Education District. We agree.

The authority to dismiss teachers in a special education district has been held to rest with the district's executive board. (*Seim v. Board of Education* (1974), 21 Ill. App. 3d 386, 315 N.E.2d 282.) In *Seim*, plaintiffs were special education teachers employed by the McLean, Logan and DeWitt Tri-County Special Education District. They protested their dismissal by the executive board of the district, arguing that this action was improper because the administrative district was the only district which had the legal authority to dismiss them. The court rejected this argument and held that the executive board was the proper authority to dismiss plaintiffs. In a dissent, one of the members of the court stated that since the administrative district was plaintiffs' employer, it should have terminated them, and its failure to do so invalidated the dismissal. It is apparent from this decision that although a participating district is the administrative district, it cannot discharge a special education district employee.

Applying *Seim* to the case at bar, District 165 lacked the authority to dismiss petitioner. His discharge could have been effected only by the executive board of the special education district. Moreover, if the dissent in *Seim* were followed here, District 186, not District 165, would have had the power to terminate petitioner's employment. We therefore hold that petitioner's discharge by District 165 was improper.

In view of our disposition of plaintiff's first two issues, we need not consider what effect a dismissal by District 165 would have on his entitlement claim to a similar position held by Allen Anderson.

For the foregoing reasons, we reverse the judgment order of the Circuit Court of Jackson County and order it to issue a writ of *mandamus* reinstating plaintiff to his former position as school psychologist in Tri-County Special Education District. We remand this cause for the purpose of ascertaining the amount of damages sustained by him as a consequence of his improper discharge.

Reversed and remanded with directions.

JONES, P. J., and KARNS, J., concur.