SEDOL TEACHERS UNION, Lake County Federation of Teachers, Local 504, IFT-AFT, AFL-CIO, Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Appellees.

First District (5th Division)   No. 1—94—1262

Opinion filed December 15, 1995.

Mildred F. Haggerty, of Haggerty, Koenig & Hill, Chartered, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of counsel), for respondents.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

On May 25, 1993, the petitioner, SEDOL Teachers Union, Local 504, IFT-AFT, AFL-CIO (the Union), filed a petition for unit clarification with the Illinois Educational Labor Relations Board (the Board). The petition sought to add approximately 18 certified employees to the existing unit of employees of the Special Education District of

Lake County, Illinois (SEDOL), represented by the Union. The Union sought to add former employees of the Lake-McHenry Regional Program (LMRP). These employees had been historically excluded from the unit represented by the Union on the basis of being "recommended for employment by the Lake-McHenry Regional Board." However, because the LMRP had been dissolved, the Union sought clarification by the Board that the exclusion of LMRP employees was no longer applicable and that former LMRP employees fit within the definition of the SEDOL unit represented by the Union.

On May 18, 1993, respondent, SEDOL Educators Association, IEA-NEA (the Association), filed a representation petition seeking to represent the 18 LMRP employees in a separate unit within SEDOL. The Executive Director of the Board consolidated the cases filed by the Union and the Association. The cases were heard together by an administrative law judge on June 8, 1993. On August 23, 1993, the judge granted the unit clarification petition filed by the Union and dismissed the Association's representation petition. However, the Board reversed the judge's decision. The Board dismissed the unit clarification petition and reinstated the Association's representation petition.

On appeal, petitioner contends that the Board erred in dismissing the unit clarification petition because: (1) positions held by former LMRP employees are newly acquired; (2) exclusion of former LMRP employees is no longer applicable; (3) positions of former LMRP employees fall within categories represented by the Union; and (4) the Board's decision is contrary to the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 1992)) and inconsistent with important labor principles.

BACKGROUND

The Special Education District of Lake County is a cooperative district organized pursuant to section 10—22.31 of the School Code. (105 ILCS 5/10—22.31 (West 1992).) SEDOL provides various special education services throughout Lake County to children aged 3 to 21. SEDOL consists of 37 member school districts. In addition, there are five individual schools serving specific handicaps for physical disabilities, hearing impaired, elementary school behavior disorder, high school behavior disorder and moderate to severe mentally disabled students. Governance and operation of SEDOL is effected through its governing board and management council.

The Lake-McHenry Regional Program also provided special education services in Lake as well as McHenry Counties and for Waukegan School District No. 60. In 1969, LMRP received Federal

funds to provide low incidence early intervention special education services to children aged zero to six. The types of handicaps served by LMRP overlapped with those served by SEDOL. However, SEDOL services children from ages 3 to 21. The purpose of LMRP was to supplement special education services, not to duplicate or supplant them. Like SEDOL, LMRP had its own governing board. In addition to its governing board, LMRP also had an advisory board, whose members were appointed by the SEDOL executive board and whose function was to advise the SEDOL executive board regarding the general operations of LMRP.

The SEDOL teachers union represents certified employees of SEDOL, such as classroom and itinerant teachers, speech therapists, prevocational coordinators, social workers, educational diagnosticians, nurses, and psychologists. However, the contract between SEDOL and the Union has historically contained an exclusion from representation of any person recommended for employment by the Lake-McHenry regional board. In 1981, the Union proposed eliminating the exclusion for LMRP employees and including them in the category of employees represented by the Union. SEDOL rejected this proposal, stating that LMRP employees were not employees of SEDOL and SEDOL had no control over them.

In April 1992, LMRP's governing board voted to dissolve the Lake-McHenry Regional Program, effective August 16, 1993, and to offer the services of LMRP through SEDOL. While the dissolution was pending, the Union proposed that the LMRP employees no longer be excluded from the bargaining agreement once LMRP was dissolved and its employees were employed by SEDOL. SEDOL rejected the Union's proposal. SEDOL stated that once the LMRP was dissolved, the exclusion would not be applicable. On May 5, 1992, the Union then withdrew its proposal to eliminate the exclusion.

Since the dissolution of LMRP, former LMRP employees provide multidisciplinary screening and diagnosis/evaluation to unserved and underserved children between the ages of birth and six. Services are offered primarily at the Parent-Infant Center and the Lake Diagnostic Center. SEDOL and LMRP staff do not interact with each other either in the performance of their duties or at in-service or staff meetings. LMRP staff continue to be paid by Federal funds that are now distributed directly to SEDOL rather than LMRP. Because they are paid from Federal funds, the LMRP employees are laid off each year until the funds are reallocated.

On May 15, 1992, the SEDOL Educators Association filed a representation petition listing SEDOL as the employer, seeking to represent all certified employees of LMRP. The Union intervened seeking

to represent the same employees, listing LMRP as employer. However, the Union withdrew its intervention petition. The Board conducted a prehearing consent conference on May 27, 1992. A consent election agreement naming SEDOL as the employer was signed between SEDOL and the Association to hold an election among the employees on June 4, 1992. The Board conducted an election and the employees voted not to be represented.

On May 18, 1993, the Association filed a new representation petition. The petition sought to represent the same employees for which the Association had petitioned in 1992. On May 25, 1993, the Union filed a unit clarification petition, seeking to include LMRP certified employees within its unit.

At a hearing conducted on August 23, 1993, the Union provided testimony to show that a community of interest exists between the employees of LMRP and SEDOL and that this community of interest extends to the functions and duties of the employees, their job descriptions, their certification, and common supervision of the employees. Dr. John Anderson, superintendent of SEDOL, testified that the psychologists at the LMRP have the same certification requirements as SEDOL teachers; however, the population that LMRP employees serve is different due to the fact that they service children aged zero to six. Helen Ullrich, director of personnel for SEDOL, testified that she processes requests for leaves of absence for both SEDOL and LMRP employees. Also, both have the same pay and benefits.

Jac Torricelli, a teacher at the LMRP, testified for the Association. She stated that she does not have the opportunity to consult with any personnel from SEDOL, except when a child turns three. She could not recall any instances where LMPR teachers were supervised by the same people who supervised the SEDOL teachers. She also stated that LMRP is family centered and operates more like a clinic, whereas SEDOL focuses on the child and the teachers perform in a classroom. Ms. Torricelli stated that these distinctions are due to the different needs of children aged birth to six.

After hearing testimony, the administrative law judge granted the unit clarification petition filed by the Union and dismissed the Association representation petition. The judge found that the community of interest which LMRP employees shared with the SEDOL employees was insufficient to warrant a separate unit. The judge concluded that a separate unit would be arbitrary and artificial.

On March 30, 1994, the Board reversed the administrative law judge's decision, stating that a unit clarification petition was not a proper method through which to add historically excluded positions

to an existing unit. The Board also stated that the LMRP employees do not share such an intense community of interest with the SEDOL unit that a separate unit of former LMRP employees would be arbitrary and inappropriate.

We affirm.

OPINION

■ Under administrative review law, judicial review of an administrative agency's decision extends to all questions of law and fact presented by the entire record and the agency's conclusions on questions of fact shall be held to be *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992); *Jones v. Illinois Educational Labor Relations Board* (1995), 272 Ill. App. 3d 612, 623, 650 N.E.2d 1092, citing *City of Decatur v. American Federation of State, County & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219.) As a general rule, courts will accord deference to the interpretation placed upon a statute by the agency charged with its administration. (*Branson v. Department of Revenue* (1994), 268 Ill. App. 3d 818, 823, 644 N.E.2d 1193.) It is not a court's function to reweigh the evidence or make an independent determination of the facts. Rather, the court's function is to ascertain whether the findings and decision of the agency are contrary to the manifest weight of the evidence. (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 88, 606 N.E.2d 1111.) A decision is contrary to the manifest weight of the evidence only where the reviewing court determines, viewing the evidence in the light most favorable to the agency, that no rational trier of fact could have agreed with the agency. *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board* (1993), 246 Ill. App. 3d 967, 973, 617 N.E.2d 790; *Forsythe v. Industrial Comm'n* (1994), 263 Ill. App. 3d 463, 469, 636 N.E.2d 56.

I

■ A unit clarification provides an official determination of the correct bargaining unit. The petition reduces disruption of orderly bargaining and conduct of business which would result from continued conflict between opposing unions. (*Smith Steel Workers v. A.O. Smith Corp.* (7th Cir. 1969), 420 F.2d 1, 9.) Petitioner argues that a unit clarification petition was an appropriate method of adding former LMRP employees to the unit represented by the Union. The Board disagreed, stating that a clarification petition was not the appropriate method to add historically excluded positions to an existing unit. We agree with the Board.

■ The unit clarification process is appropriate only under certain narrow circumstances: (1) to remove statutorily excluded employees from a bargaining unit (see *Community High School District No. 218,* 2 Pub. Employee Rep. (Ill.) par. 1087, No. 84—UC—011—C (IELRB June 24, 1986)); (2) to resolve ambiguities concerning the unit placement of individuals who come within a newly established job classification or who fall within an existing job classification that has undergone recent, substantial changes (see *Thornton Township High School District No. 205,* 2 Pub. Employee Rep. (Ill.) par. 1103, No. 85—UC—0008—C (IELRB August 20, 1986)); and (3) to resolve unit ambiguities resulting from changes in statutory or case law (see *Lockport Township High School District No. 205,* 8 Pub. Employee Rep. (Ill.) par. 1111, No. 92—UC—0003—C (IELRB October 12, 1992)).

■ Petitioner contends that the positions held by the LMRP employees were new to the SEDOL bargaining unit. Petitioner relies on *Sterling Community Unit District No. 5,* 2 Pub. Employee Rep. (Ill.) par. 1051, No. 84—UC—0008—C (IELRB March 25, 1986). In *Sterling,* the Association filed a unit clarification petition seeking to include teaching personnel employed at the Whiteside Area Vocational Center (the Center) in a bargaining unit. A dispute arose concerning the unit placement of the Center teachers. The Center was created pursuant to a joint agreement authorized by section 10—22.31 of the School Code. (105 ILCS 5/10—22.31 (West 1992).) The Center was directed by a board of control, which was composed of the superintendents of each member school. Sterling District No. 5 was the administrative district, but the board of control retained the ultimate authority to change its administrative district. The Center and the district argued that the Center teachers could not be included in a bargaining unit composed of district teachers because the board of control, rather than the district, was the employer of the Center teachers.

On administrative review, the Board found that the board of control made substantial decisions about the Center, voted on filling positions, discharges, disciplinary action and the amount of supplemental pay received by Center teachers. The board of control also voted on recalling a Center teacher from a reduction in force and on the procedure to be applied to a Center teacher's grievance. The board of control adopted reduction in force and professional growth policies covering the Center teachers that were different from the policies applicable to the district teachers. The Center teachers were supervised by the director of the Center rather than the district staff. The Board concluded that the designation of those teachers as "employees" of the district for legal purposes and the functions performed by the District were for administrative convenience only.

Petitioner also relies on *Seim v. Board of Education of Community Unit School District No. 87* (1974), 21 Ill. App. 3d 386, 315 N.E.2d 282, and *Evans v. Board of Education of Murphysboro Community Unit School District* (1980), 85 Ill. App. 3d 436, 406 N.E.2d 855. In *Seim*, plaintiffs were special education teachers employed by the Tri-County Association. This association was formed as part of a joint agreement among 29 school districts. The plaintiffs protested their dismissal by the executive board of the association, arguing that this action was improper because the administrative district was the only district which had the legal authority to dismiss them. Evidence revealed that the plaintiffs worked in several school districts within the association, but neither worked in the defendant district. Rather, defendant merely happened to be taking its turn as the administrative district at that point in time. (*Seim*, 21 Ill. App. 3d at 392.) The court noted that the association hired the plaintiffs, utilized their services, evaluated their work and made the decision to terminate them. Thus, the court held that the executive board of the association was the proper authority to dismiss plaintiffs. *Seim*, 21 Ill. App. 3d at 393.

A similar situation occurred in *Evans*. There, 25 school districts formed the Tri-County Special Education District (the Cooperative). The executive board of the Cooperative hired petitioner as a special education teacher for District 165. District 165 dismissed petitioner and he disputed his dismissal, contending that the administrative district had no authority to dismiss him. The court agreed. Relying on the *Seim* decision, the court held that "although a participating district is the administrative district, it cannot discharge a special education district employee." *Evans*, 85 Ill. App. 3d at 442.

These cases on which petitioner relies are readily distinguishable. First, LMRP was not the product of a joint agreement. Instead, LMRP came into existence in 1967 when SEDOL received a Federal summer grant and Waukegan School District No. 60 and Special Education District of McHenry County (SEDOM) were invited to participate in a hearing-impaired program supported by the grant.

Second, the record shows that LMRP was not a separate and distinct entity from SEDOL. For example, not only was SEDOL LMRP's administrative district, but in LMRP's 1980 bylaws, SEDOL was named as the "legal entity which shall be responsible for: (1) fiscal matters; (2) employment matters; and (3) general review of all operations including the grant proposal. In 1988, LMRP again named SEDOL as the legal entity in its bylaws and the SEDOL executive board was made responsible for (1) preparing and monitoring budgets approved by the LMRP governing board; (2) approving all budget

amendments in compliance with Federal and State grant guidelines; (3) approving and monitoring all LMRP policies; (4) reviewing needs assessment prior to submission to the LMRP governing board; and (5) other matters as authorized by statute or the LMRP governing board." Also, LMRP's advisory board members were appointed by the SEDOL executive board, whose function was to advise the SEDOL executive board regarding the general operations of LMRP. LMRP's main function was to secure specific grants for special education services that it provided. However, LMRP could only obtain other funding with the approval of SEDOL's executive board.

Furthermore, in 1991, the Illinois State Board of Education allowed cooperatives such as SEDOL to elect to receive funds directly, maintain the regional program structure or to have a combination of the two. SEDOL recommended to LMRP's governing board that LMRP be dissolved. The governing board approved the recommendation; however, the restructuring was delayed until SEDOL secured a satisfactory contract with the established bargaining unit represented by the Union. Moreover, SEDOL entered into a consent election agreement with the Association for an election among the LMRP employees and was named in the agreement as the employer of those employees.

It is clear from the record that SEDOL had final authority and control over LMRP program operations. SEDOL's relationship with LMRP was more than administrative. Thus, the LMRP employees could hardly be considered "new" for the purposes of a unit clarification petition.

## II

■ Petitioner next contends that denial of the unit clarification petition based on the historical exclusion of the LMRP employees was erroneous because the exclusion is no longer applicable. The collective bargaining agreement between SEDOL and the Union excludes from representation "any person recommended for employment by the Lake[-]McHenry Regional Board." Petitioner states that the basis of the exclusion was clearly because of the LMRP employee's status and nothing else. However, as we have explained above, a unit clarification petition was not an appropriate method to add historically excluded employees to an existing unit, regardless of the reason for the exclusion. To accrete employees into an existing unit, a self-determination petition must be filed with the proper showing of interest. With such a petition, there is no question of representation in the existing unit. There is only a question of representation among the employees sought to be added. (*Du Page Area Vocational Educa-*

*tion Authority v. Illinois Educational Labor Relations Board* (1988), 167 Ill. App. 3d 927, 940, 522 N.E.2d 292.) A self-determination petition is also proper when there are conflicting claims over the representation of employees by two competing unions. See *Board of Trustees of Community College District No. 508*, 9 Pub. Employee Rep. (Ill.) par. 1039, No. 93—UC—0002—C (Exec. Dir. Dec. December 21, 1992).

In this case, the SEDOL employees, of course, were already represented by the Union. There was only the question of representation of the LMRP employees. There is also a conflict between the Union and the Association over which one should represent the LMRP employees. Thus, a self-determination petition was the appropriate method for adding the LMRP employees.

### III

Petitioner's next contention is that the unit clarification petition was proper because the positions of former LMRP employees fall within categories represented by the Union. However, a unit clarification petition in a situation in which the positions are neither newly created nor substantially changed would effectively deprive the affected employees of their right to freely choose a bargaining representative. (*Board of Education of Unit District No. 5*, 2 Pub. Employee Rep. (Ill.) par. 1037, No. 84—UC—0004—5 (IELRB February 11, 1986); see *Lockport Township High School District 205*, 8 Pub. Employee Rep. (Ill.) par. 1111, No. 92—UC—0003—C (IELRB October 2, 1992); *Mattoon Community Unit School District No. 2*, 4 Pub. Employee Rep. (Ill.) par. 1148, No. 88—UC—0002—S (IELRB November 3, 1988); *Southern Illinois University (Edwardsville)*, 7 Pub. Employee Rep. (Ill.) par. 1012, Nos. 89—UC—0012—S, 89—UC—0013—S (IELRB December 17, 1990).) For example, in *Round Lake District No. 116*, 2 Pub. Employee Rep. (Ill.) par. 1038, No. 84—UC—0012—C (IELRB February 11, 1986), the petitioner sought to add part-time teachers in a unit of full-time teachers by means of a unit clarification petition. The Board dismissed the petition because the position of part-time teachers had been neither newly created nor substantially changed. Also, the part-time teachers had been historically excluded from the unit. Thus, the Board found that the unit clarification petition was not appropriate.

■ Like *Round Lake*, the positions of the LMRP teachers were not newly created nor have their job duties and responsibilities substantially changed. The LMRP teachers have also been historically excluded from the SEDOL bargaining unit. To place the LMRP positions into a unit through unit clarification procedures without a self-determination election would effectively deprive them of their

right to select a representative of their own choosing. A self-determination election is necessary to ensure that the LMRP employees can exercise their right to freely choose a bargaining representative. See *Southern Illinois University (Edwardsville)*, 7 Pub. Employee Rep. (Ill.) par. 1012, Nos. 89—UC—0012—S, 89—UC—0013—S (IELRB December 17, 1990).

We therefore disagree with petitioner's statement that the Board "placed too much emphasis on the exclusion" of LMRP employees in denying the clarification petition.

## IV

Lastly, petitioner contends that the decision of the Board was contrary to the policies of the Illinois Educational Labor Relations Act (the Act) and inconsistent with important labor principles. Specifically, petitioner argues that the creation of a separate unit of former LMRP employees in SEDOL is highly inappropriate because the separation would lead to fragmentation. He also argues that the separation fails to take into account both the configuration of existing units and the relative community of interest of the employees with those in a unit already in place.

In determining the appropriateness of a collective bargaining unit, section 7(a) of the Act provides, in relevant part:

> "In determining the appropriateness of a unit, the Board shall decide in each case *** the unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as historical pattern of recognition, community of interest, including employees skills and functions, degree of functional integration, interchangeability and contact among employees, common supervision, wages, hours, and other working conditions of the employees involved, and the desires of the employees." (115 ILCS 5/7(a) (West 1992).)

Furthermore, section 7(a) does not require that a proposed unit be the most appropriate unit. Rather, it merely requires that the unit be appropriate. (*Black Hawk College Professional Technical Unit v. Illinois Educational Labor Relations Board* (1995), 275 Ill. App. 3d 189, 198-99, 655 N.E.2d 1054, 1059.) However, a bargaining unit will not be appropriate if, under all of the circumstances, it is artificial or arbitrary. *Thornton Township High School District No. 205*, 2 Pub. Employee Rep. (Ill.) par. 1103, No. 85—UC—0008—C (IELRB August 20, 1986).

In the instant case, LMRP employees have been historically excluded from the SEDOL bargaining unit. The LMRP employees share a community of interest with each other as they have similar skills and functions, have contact with each other, and share com-

mon supervision. They perform their functions during the same hours of the day and work at the Parent-Infant Center or the Lake Diagnostic Center. They are also paid from Federal funds. Finally, the Board found that at least 30% of the unit employees sought to be represented by the Association. Based on these factors, we conclude that a bargaining unit of former LMRP employees would be appropriate.

We must next consider whether limiting the bargaining unit to LMRP employees is artificial or arbitrary. Thus, we must determine the extent to which the LMRP employees sought by the Association's petition share a community of interest with the SEDOL unit. (See *Thornton Township High School District No. 205*, 2 Pub. Employee Rep. (Ill.) par. 1103, No. 85—UC—0008—C (IELRB August 20, 1986).) Although the LMRP and SEDOL employees provide special education services, their functions are distinguishable in several respects. First, SEDOL teachers service children aged 3 to 21, while LMRP teachers service children aged zero to six. Second, LMRP employees act as therapists, whereas SEDOL employees are teachers. Third, LMRP services are family centered and LMRP employees meet with parents on a regular basis and services are provided at two sites in Lake County. On the other hand, SEDOL employees focus on the child and work directly with children in classrooms. They usually have contact with parents only twice a year.

Also, there is virtually no integration or contact between SEDOL and LMRP employees. They do not attend in-service training together and do not have common supervision. They also have different work schedules: LMRP staff work 205 days in a calendar year while SEDOL employees work 185 days in a school year. Although LMRP and SEDOL employees receive the same pay and benefits, LMRP employees are paid through a Federal grant which subjects them to a reduction in force each year until Federal funds are reallocated. Hence, they do not enjoy the same tenure rights as SEDOL employees.

Based on the these factors, we believe that LMRP and SEDOL employees do not share such an intense community of interest that it would be arbitrary and inappropriate to place the former LMRP employees in a separate bargaining unit. We hold that the Board's decision was not against the manifest weight of the evidence.

For the reasons cited herein, the decision of the Board is affirmed.

Affirmed.

GORDON and T. O'BRIEN, JJ., concur.