COMMUNITY COLLEGE DISTRICT No. 509 (Elgin Community College), Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—93—3913

Opinion filed January 8, 1996.

Gillio & Associates, of Chicago (Vickie A. Gillio, of counsel), for petitioner.

Cornfield & Feldman, of Chicago (Gilbert Feldman, of counsel), for respondent Elgin Community College Faculty Association.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Illinois Community College Trustees Association, of Flossmoor (Robert B. Maher, of counsel), for *amicus curiae* Illinois Community College Trustees Association.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Community College District number 509 (Elgin Community College, College or ECC) appeals a decision of respondent Illinois Educational Labor Relations Board (IELRB or Board) in favor of respondent Elgin Community College Faculty Association, Local 1211, IFT/AFT, AFL-CIO (Union), regarding two consolidated petitions of self-determination seeking to include certain part-time faculty in their bargaining unit.

■ The record on appeal indicates the following facts. On September 20, 1991, the Union filed a self-determination petition with the Board in case number 92—RS—0003—C. The Union, which was the exclusive bargaining representative for a unit of full-time faculty at ECC, ultimately sought to add the following group of persons to the bargaining unit:

"regular part-time faculty who meet the College's hiring qualifications for part-time faculty, teach at least 12 credit hours in an academic year or 15 credit hours including summer (or the contact hour equivalent), and who work for at least the minimum number of credit or contact hours described herein for three years. Said group shall include part-time counsellors and librarians and said work shall include tutorials and other nontraditional work performed by part-time faculty."

On January 13, 1992, the administrative law judge (ALJ) assigned to the matter issued a "Recommended Decision and Order" dismissing the petition on the ground that the part-time faculty at issue were "short-term employees" excluded by section 2(b) of the Illinois Educational Labor Relations Act (IELRA or Act) (115 ILCS 5/2(b) (West 1992)). In reaching this decision, the ALJ also concluded that an amendment to the Act effective January 1, 1992, was not retroactively applicable to case number 92—RS—0003—C. The Act, as amended, includes section 2(q), which provides the following definition:

" 'Short-term employee' is an employee who is employed for less than 2 consecutive calendar quarters during a calendar year and who does not have a reasonable assurance that he or she will be

rehired by the same employer for the same service in a subsequent calendar year. Nothing in this subsection shall affect the employee status of individuals who were covered by a collective bargaining agreement on the effective date of this amendatory act of 1991." 115 ILCS 5/2(q) (West 1992).

Thus, on January 31, 1992, the Union filed another self-determination petition as case number 92—RS—0009—C. The group that the Union sought to add to the bargaining unit was identical to that described above in case number 92—RS—0003—C. On April 6, 1992, the ALJ held a hearing on the second petition.

On April 30, 1992, the Board vacated the "Recommended Decision and Order" and remanded case number 92—RS—0003—C in light of the Board's decision in *Harper College*, 8 Pub. Employee Rep. (Ill.) par. 1042, No. 92—RC—0008—C (IELRB April 3, 1992). The Board then consolidated case number 92—RS—0003—C with 92—RS—0009—C, which was then still pending. *Elgin Community College District # 509*, 8 Pub. Employee Rep. (Ill.) par. 1046, No. 92—RS—0003—C (IELRB April 30, 1992).

The record of the hearing in case number 92—RS—0003—C indicates the following facts. The parties stipulated that the Union was an employee organization and ECC was an educational employer as those terms are defined by the Act. ECC is a two-year community college with a main campus in Elgin, Illinois, and satellite locations throughout District 509. The College employed 110 full-time faculty, who were represented by the Union. The College also employed 299 part-time faculty members. The College and the Union had a collective bargaining agreement covering calendar years 1991 and 1992. All of the prior faculty collective bargaining agreements between the College and the Union were limited to full-time faculty. There was no discussion of including part-time employees during the most recent contract negotiations. The full-time faculty voted 33 to 26 to attempt to organize part-time employees into the existing faculty unit. Fifteen full-time faculty sought, but failed to obtain, a second vote on the ground that the inclusion of part-time employees would create a conflict of interest. The Union's petition sought to add between 17 and 26 of the part-time employees to the bargaining unit.

Evidence was adduced regarding the similarities and differences between full-time and part-time employees at the College. Candidates for full-time faculty positions at ECC are extensively screened, including an interview by a committee partially comprised of full-time faculty and a presentation of a sample lesson. Current part-time faculty applying for a full-time position go through this process and do not receive special consideration. Applicants for a part-time position are

not extensively screened. Part-time hiring is generally based on the recommendation of a single full-time faculty member; such recommendations are typically approved by the dean of the College and sent to the board of trustees for action. Generally, all faculty must possess a graduate degree and experience teaching at a community college to teach at ECC. However, part-time employees may be hired with an undergraduate degree, if he or she has expertise in the field at issue.

The main function of both full-time and part-time faculty is teaching. The main functions of full-time and part-time counselors and librarians are providing counseling and library services. However, unlike part-time faculty, full-time faculty are responsible for maintaining a constant presence at the main campus and are required to keep office hours. Part-time faculty are encouraged to keep office hours, and some do so. However, part-time employees are not required to do so, and the keeping of office hours does not affect part-time faculty compensation.

Moreover, unlike part-time faculty, full-time faculty members have responsibilities other than the actual teaching of classes. For example, full-time faculty are expected to participate in committee work. One such committee, the faculty development committee, which is comprised solely of full-time faculty, makes decisions and recommendations regarding spending on faculty development proposals. Although faculty development programs are sometimes open to part-time faculty, they are strictly voluntary. Part-time counsellors and librarians have no such programs.

Similarly, full-time faculty members are required or expected to attend "structural area meetings"; part-time members may attend such meetings, but are not compensated for doing so. Full-time faculty are expected to attend graduation ceremonies; part-time faculty are not. Full-time faculty are prohibited from performing any outside professional activities that would constitute a conflict of interest or impair their performance. Part-time faculty are not so prohibited; one part-time instructor testified that he was never given rules regarding outside employment.

Full-time faculty are also responsible for developing annual goals for the institution, developing curricula for the respective departments of the College, and textbook selection. Part-time faculty do not participate in developing annual institutional goals and have at most an advisory role in the other areas. All faculty must develop a course syllabus for each class they teach, but part-time faculty are given little discretion in the contents of the syllabus, particularly when a part-time member is first hired. Even more experienced part-time

faculty are generally told what chapters of a book will be covered, how many tests will be given, and whether outside projects will be limited.

Full-time faculty are required to teach 30 to 32 credit hours or 36 to 38 contact hours per year, but they may also elect to teach classes or tutorials beyond the required courseload. Part-time faculty, however, have no minimum courseload. Part-time faculty teach an average of four credit hours per semester, but the courseload may vary from semester to semester. Full-time counselors and librarians are required to work 35 hours per week; part-time employees have no such requirement. When a full-time counselor elects to teach a class beyond the required hours, he or she receives "compensatory time"; a part-time employee does not.

Pursuant to the collective bargaining agreement, full-time employees are compensated under a negotiated salary schedule based on each person's educational background and work experience. When a full-time employee member misses classes or works less than the required load, his or her salary is reduced on a *pro rata* basis, but may use accrued benefits to make up for lost salary. Part-time faculty are paid a flat rate for each credit or contact hour taught, based on the College's survey of other community colleges in the vicinity; the person's education and experience are not considered. Similarly, part-time counselors and librarians are paid per hour of work performed.

Full-time employees enjoy a variety of fringe benefits, including, but not limited to: health and life insurance; a flexible spending account; tuition benefits; a tax-deferred annuity; leave for jury duty; parental leave; professional leave; and religious and sabbatical leave. Part-time faculty members receive only those benefits mandated by law, such as social security and medicaid. Part-time counselors and librarians receive no fringe benefits.

The instructional coordinator of an area, who is a full-time faculty member, schedules classes for full-time faculty before classes for part-time faculty. Full-time faculty may appeal decisions of the instructional coordinator to the dean; part-time faculty have no right of appeal. Full-time faculty members may, under certain circumstances, bump part-time members from teaching assignments. Senior full-time members may also bump junior full-time members, but junior full-time members may reclaim an assignment the following semester. Full-time counselors and librarians are also assigned their work hours before part-time employees; full-time counselors may bump a part-time employee in order to teach a course.

Once hired, full-time faculty are initially evaluated annually by

the dean in their particular area; after attaining tenure, full-time faculty are evaluated every three years. Junior full-time faculty members may be assigned a senior member as a "mentor," but the "mentor" is not required to evaluate the junior member for retention. Part-time faculty who have taught at ECC are initially supervised and evaluated by the dean of the appropriate area or a full-time faculty member. There is no evidence that a part-time faculty member was assigned a supervisor after three years at the College.

After three years of employment at ECC, full-time faculty are guaranteed eligibility for tenure as well as procedural and substantive rights regarding dismissal, both by statute and the collective bargaining agreement. Part-time faculty are not considered for tenure and are not guaranteed the same rights as full-time faculty regarding dismissal.

When the board of trustees approves a new full-time faculty position, it reduces the budget allocation for part-time faculty in that area. Under the collective bargaining agreement, in the event of a reduction in force, before laying off or reducing to part-time a full-time faculty member, the College must eliminate all part-time and voluntary assignments that the full-time faculty member is competent to fill. Part-time faculty have no protections from reductions in force.

The record contains not only the collective bargaining agreement, but also a copy of the then-current employment contract that a part-time employee would enter into with the College for the specific courses that employee would teach that semester. The contract expressly states that the appointment is not to be considered a commitment by the College for any future assignment. The contract also expressly states that the part-time faculty member does not accrue any right to tenure or to fringe benefits under the contract. The contract further provides that the College reserves the right to withdraw the assignment from the part-time faculty member if enrollment does not justify offering the class or if a full-time faculty member is ultimately assigned to the class.

On August 18, 1992, the ALJ issued a "Recommended Decision and Order" dismissing the petitions in the consolidated cases. The ALJ concluded that the part-time faculty, counselors and librarians who met the credit-hour criterion set forth in the Union's petition for three years were not "short term employees" excluded under sections 2(b) and 2(q) of the Act insofar as they had a "reasonable assurance" of being rehired in later years under the Board's decision in the *Harper College* case. However, the ALJ also concluded that any such employees would have to provide at least six credit hours of instruc-

tion per academic semester to qualify as "educational employees" under section 2(b) of the Act. The ALJ also held that the inherent divergent and conflicting interests between the "regular" part-time faculty and the full-time faculty at ECC were such that the proposed bargaining unit would not be an appropriate unit under section 7 of the Act (115 ILCS 5/7 (West 1992)). The ALJ thus decided, after determining that the Union would not agree to represent the "regular" part-time employees in a separate unit, to dismiss the petitions.

On September 1, 1992, the Union timely filed its objections to the ALJ's "Recommended Decision and Order." The College filed its response with the Board. On March 25, 1993, the Board issued its "Opinion and Order" reversing the ALJ. The Board largely adopted the ALJ's findings of fact. The Board also largely agreed with the ALJ's analysis of the "short-term employee" issue.

The Board ruled, however, that the bargaining unit proposed by the Union was an appropriate issue. The Board, reviewing the factors set forth in section 7(a) of the Act (115 ILCS 5/7(a) (West 1992)), determined that the primary differences between the full-time and part-time faculty arose out of the provisions of the collective bargaining agreement and were not inherent in the positions themselves. The Board stated that if the part-time faculty were organized into a separate unit, the full-time and part-time faculty would still have clashing interests; it would only require the College, rather than the Union, to resolve those clashes. The Board also concluded that the grouping of the "regular" part-time faculty with the full-time faculty was not artificial or arbitrary. Thus, the Board directed that a self-determination election be conducted among part-time faculty who taught six or more credit hours per semester in an academic year and that teach or otherwise work the required hours for three years.

The self-determination election was held on October 6, 1993. The Board certified that the Union would be the exclusive bargaining representative for the bargaining unit on October 15, 1993. The College timely filed its petition for direct review by this court on November 15, 1993.

■ Judicial review of administrative agency action extends to all questions of law and fact in the record. (*City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507, 554 N.E.2d 155, 159.) Generally, courts accord deference to the statutory interpretation of the agency. (*Board of Trustees v. Illinois Educational Labor Relations Board* (1992), 235 Ill. App. 3d 709, 721, 600 N.E.2d 1292, 1299.) A reviewing court may reverse an administrative agency's finding of fact only if it is against the manifest weight of the evidence. (See *Freeport*, 135 Ill. 2d at 507, 554 N.E.2d at 159.)

However, where the question involved is one of law, such as the proper interpretation or construction of a statute, the Board's ruling is not binding on the reviewing court. *Freeport*, 135 Ill. 2d at 507, 554 N.E.2d at 159-60; *University of Illinois*, 235 Ill. App. 3d at 721, 600 N.E.2d at 1299.

■ On appeal, the College argues *only* that the Board erred in ruling that it was appropriate to include the "regular" part-time faculty into the bargaining unit. In determining the appropriateness of a collective bargaining unit, the IELRA provides in section 7(a):

"[T]he Board shall decide in each case, in order to ensure employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as historical pattern of recognition, community of interest, including employee skills and functions, degree of functional integration, interchangeability and contact among employees, common supervision, wages, hours and other working conditions of the employees involved, and the desires of the employees." (115 ILCS 5/7(a) (West 1992).)

Section 7(a) does not require that a proposed unit be the "most appropriate unit"; rather, the unit need only be an "appropriate" unit. (*Black Hawk College Professional Technical Unit v. Illinois Educational Labor Relations Board* (1995), 275 Ill. App. 3d 189, 198-99; *Sandburg Faculty Association v. Illinois Educational Labor Relations Board* (1993), 248 Ill. App. 3d 1028, 1036, 618 N.E.2d 989, 995.) The language of section 7(a), requiring that a determination be made "in each case," suggests that such determinations will turn largely on questions of fact. Nevertheless, it is a misinterpretation of the Act to focus on one or two factors to the exclusion of the others. See *Black Hawk College Professional Technical Unit*, 275 Ill. App. 3d at 193-96; *Sandburg Faculty Association*, 248 Ill. App. 3d at 1034-36, 618 N.E.2d at 993-95.

■ In this case, the Board adopted the ALJ's findings of fact and found additional facts. The Board weighed the statutory factors, placing a greater weight on the functional equivalence of the "regular" part-time faculty to the full-time faculty and a lesser weight on the differences between them than the weights assigned by the ALJ. The Board also concluded that the inclusion of the "regular" part-time faculty in the full-time faculty bargaining unit was not arbitrary, concluding that the "regular" part-time faculty was closer to the full-time faculty than to the pure part-time faculty.

The difference between the decisions of the ALJ and the Board demonstrates that reasonable minds may differ on the weight to be accorded to the various statutory factors in this case. Yet this differ-

ence does not alter the standards of review. If the Board had ignored the facts presented by the record, or had relied on the functional equivalence of the faculty and failed to address the countervailing factors, the Board would have erred. However, the record, the ALJ's recommended decision and the Board's order, taken together, show only that the Board considered, but ultimately rejected, the arguments that persuaded the ALJ regarding the statutory factors. Accordingly, we cannot conclude that the Board's decision—that the proposed unit was *an* appropriate unit—is against the manifest weight of the evidence.

For the aforementioned reasons, the decision of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

BUCKLEY and BRADEN, JJ., concur.