BLACK HAWK COLLEGE PROFESSIONAL TECHNICAL UNIT *et al.*, Petitioners-Appellants, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (3rd Division)   Nos. 1—93—0528, 1—93—0603 cons.

Opinion filed September 6, 1995.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for petitioners.

Robert G. Toews, Assistant Attorney General, of Chicago, for respondent Illinois Educational Labor Relations Board.

Robert C. Long and John F. Bowen, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for respondent Black Hawk College.

JUSTICE RIZZI delivered the opinion of the court:

Black Hawk College Professional Technical Unit (PRO/TECH) filed a self-determination petition with the State of Illinois Educational Labor Relations Board (the Board). The petition seeks to merge as a bargaining unit PRO/TECH, which is a bargaining unit of professional and technical employees at Black Hawk College (College), with another bargaining unit, Black Hawk College Teachers Union (TEACHERS), which is composed of the full-time faculty of the College. Both bargaining units belong to the same labor union, Local No.

1836, Illinois Federation of Teachers-American Federation of Teachers (IFT-AFT), AFL-CIO.

The Board ruled that section 7(d) of the Illinois Educational Labor Relations Act (115 ILCS 5/7(d) (West 1992)) (Act) did not bar the petition, but it also ruled that the merger of PRO/TECH and TEACHERS would not form an appropriate bargaining unit because they do not share a sufficient community of interest and, therefore, dismissed the petition.

PRO/TECH and TEACHERS filed in the appellate court a petition for direct review of the Board's order pursuant to Supreme Court Rule 335 (134 Ill. 2d R. 335), challenging the Board's dismissal of the self-determination petition to merge. (See 115 ILCS 5/16(a) (West 1992).) The College also filed in the appellate court a petition for direct review of the Board's order pursuant to Supreme Court Rule 335, challenging the Board's ruling that the self-determination petition to merge is not barred by section 7(d) of the Act. (See 115 ILCS 5/16(a) (West 1992).) The Board was named as a respondent in each of the two appeals pursuant to the joinder requirement of Supreme Court Rule 335(a). The two appeals have been consolidated.

We affirm the Board's ruling that section 7(d) of the Act does not bar the self-determination petition to merge; we reverse the Board's dismissal of the self-determination petition to merge and hold that the merger of PRO/TECH and TEACHERS is an appropriate bargaining unit; and we remand to the Board with directions to hold an election to merge as requested by the self-determination petition and as provided by the Act, and for such further proceedings as the Board shall determine.

The College is a fully accredited community college situated on two separate campuses. There is a campus in Moline, Illinois, and another campus in Kewanee, Illinois. The College also operates five off-campus programs in the surrounding areas.

Generally, the College has a small campus environment. It has the equivalent of about 8,000 full-time students, and it employs about 750 people. It offers associate degree programs in arts, liberal studies, applied science, and science; it also offers career program certificates. Its fall and spring semesters are 16 weeks long. It also has an eight-week summer session and a six-week inter-session between the spring and summer terms.

Both PRO/TECH and TEACHERS have been certified pursuant to the Act as exclusive representatives of the union for the employees that they represent at the College. PRO/TECH has been the exclusive union representative at the College for nonteaching professional and technical employees since 1990. Currently, there are about

45 employees in PRO/TECH. TEACHERS has been the exclusive union representative for all full-time faculty members at the College since 1984. Currently, there are about 165 full-time faculty employees in TEACHERS.

In addition to PRO/TECH and TEACHERS, there are three other union unit bargaining representatives at the College: a unit of part-time faculty members; a unit of public safety employees; and a unit of nonprofessional support staff employees. Like TEACHERS and PRO/TECH, the units for the part-time faculty members and the public safety employees are part of Local No. 1836, IFT-AFT, AFL-CIO.

■ The petition that was filed by PRO/TECH to merge PRO/TECH and TEACHERS into a single bargaining unit of Local No. 1836, IFT-AFT, AFL-CIO, is called a petition for self-determination pursuant to the Act. A petition seeking the merger of existing bargaining units is classified as a self-determination petition if there is no question concerning representation. 80 Ill. Adm. Code § 1110.180(b) (1992).

We first address whether the Board erred in ruling that section 7(d) of the Act does not bar the petition filed by PRO/TECH. Section 7(d) provides:

> "No election may be conducted in any bargaining unit during the term of a collective bargaining agreement covering such unit or subdivision thereof, except the Board may direct an election after the filing of a petition between January 15 and March 1 of the final year of a collective bargaining agreement." 115 ILCS 5/7(d) (West 1992).

It is undisputed that the petition in the present case was not filed between January 15 and March 15 of the final year of the collective bargaining agreement of either PRO/TECH or TEACHERS. Thus, the part of section 7(d) that is in dispute here is the part that states that "[n]o election may be conducted in any bargaining unit during the term of a collective bargaining agreement covering such unit or subdivision thereof." (115 ILCS 5/7(d) (West 1992).) This proscription in section 7(d) states a well-established labor law precept that is known as the contract bar doctrine.

■ The essence of the contract bar doctrine is that the existence of a current and valid collective bargaining contract will ordinarily prevent the holding of an election in any bargaining unit. (See 1 P. Hardin, *Developing Labor Law* 396-411 (3d ed. 1992); 48 Am. Jur. 2d *Labor & Labor Relations* § 700 (1979).) The bar provided by the contract bar doctrine, however, is applicable only to representational elections or elections where a representational question is an issue,

or decertification elections where the employees would have to vote whether they wish to be represented. See *O'Hare v. General Marine Transport Corp.* (2d Cir. 1984), 740 F.2d 160, 172; *Benson v. Brower's Moving & Storage, Inc.* (2d Cir. 1990), 907 F.2d 310, 315.

A question concerning representation has a specific reference in labor law. Specifically, it means that a labor organization or individual seeks recognition as the bargaining agent and the employer declines to recognize it, thus requiring a Board, *e.g.*, the National Labor Relations Board (NLRB), to determine whether the union or the individual represents a majority of the employees. It significantly changes or destabilizes the collective bargaining relationship between the employer and the labor union. See *Libbey-Owens-Ford Glass Co.* (1968), 169 N.L.R.B. 126, 127-28; 1 P. Hardin, Developing Labor Law 376 (3d ed. 1992).

In *Libbey*, the NLRB held that a unit clarification petition filed during the period of the existing labor contract did not fall within the contract bar doctrine where the petition sought an election concerning a proposed merger of three existing bargaining units that were represented by the same union. The NLRB stated: "There is no actual question concerning representation because the Employer does not dispute the Union's representative status at any of the plants." *Libbey*, 169 N.L.R.B. at 127.

The reason that the issue in *Libbey* did not involve a representation question is because the petition proposed a change in the scope of the bargaining unit rather than proposing whether the employees wanted union representation at all, or whether the employees wanted a change of representation to a rival union. *Libbey*, 169 N.L.R.B. at 127; see *United Glass & Ceramic Workers of North America v. N.L.R.B.* (3d Cir. 1972), 463 F.2d 31, 36; *N.L.R.B. v. Marine Optical, Inc.* (1st Cir. 1982), 671 F.2d 11, 16; *Libbey-Owens-Ford v. N.L.R.B.* (3d Cir. 1974), 495 F.2d 1195.

■ Since section 7(d) of the Act is a codification of the contract bar doctrine, which is not an absolute bar to every kind of election during the term of a collective bargaining agreement, the Board in the past has recognized that section 7(d) does not operate as an absolute bar to every kind of election during the term of a collective bargaining agreement. See *Community Consolidated School District No. 59*, 2 Pub. Employee Rep. (Ill.) par. 1088, at VII-247, No. 85—UC—0009—C (IELRB June 24, 1986) (the "petition does not raise the possibility of destabilizing the collective bargaining relationship, and we conclude that the current collective bargaining agreement does not operate as a bar to the petition before us"); *Rockford School District No. 205*, 6 Pub. Employee Rep. (Ill.) par. 1093, at IX-325, No.

86—RC—0024—C (IELRB November 5, 1986) (permitting self-determination petition to proceed did not "lead to significant disruption to the parties' collective bargaining relationships and labor relations stability").

It follows that section 7(d) is applicable only to representational elections or elections where a representational issue is raised, or decertification elections. Barring these elections carries out the intent of section 7(d) because they would significantly disrupt the existing and ongoing collective bargaining relationship between the employer and the union itself. Section 7(d), however, is not applicable to a self-determination petition such as was filed in the present case, which merely seeks to merge two existing bargaining units of the same union and which would not significantly change or destabilize the collective bargaining relationship between the employer and the labor union.

■ In 1990, the Board's rules and regulations were amended to reflect the use of self-determination petitions seeking a merger of existing collective bargaining units where a question concerning representation would not be presented. (See 80 Ill. Adm. Code § 1110.180(b) (1992).) Specifically, section 1110.180(b) provides:

"Petitioners for Self-Determination

\*\*\*

(b) A petition to merge two or more existing bargaining units, where a question concerning representation would not be presented by their inclusion, may be filed by an employee, a group of employees, or exclusive representative of either existing bargaining unit." 80 Ill. Adm. Code § 1110.180(b) (1992).

In the present case, the Board found, and there is nothing to indicate otherwise, that an election to merge PRO/TECH and TEACHERS as requested by the self-determination petition would not raise a representation question and specifically would not cause a significant disruption to the existing bargaining relationship between the employer and the labor union. On that basis, the Board ruled that the contract bar doctrine in section 7(d) is not applicable to the petition. We agree with the Board for the reasons that we have stated.

We next address the Board's dismissal of the petition. The Board's dismissal was founded upon its conclusion that the petitioned-for bargaining unit, which would be a merger of PRO/TECH and TEACHERS, would be an inappropriate bargaining unit. In determining the appropriateness of a collective bargaining unit, the Act provides in section 7(a):

"(a) In determining the appropriateness of a unit, the Board shall decide in each case, in order to ensure employees the fullest

freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as historical pattern of recognition, community of interest, including employee skills and functions, degree of functional integration, interchangeability and contact among employees, common supervision, wages, hours and other working conditions of the employees involved, and the desires of the employees." 115 ILCS 5/7(a) (West 1992).

In the present case, the basis of the Board's rejection of the proposed unit is set forth in the Board's opinion and order as follows:

"Petitioners contend that *Carl Sandburg II* should be overruled on the ground that the factors on which it relied, collegial governance and tenure, are overstated. Petitioners argue that faculty participation in collegial governance is not necessarily an issue in the collective bargaining process. This argument fails to recognize the effect of faculty participation in collegial governance on the relationship between the faculty and College management, and the resulting influence of the faculty over College management at the bargaining table. For this reason, participation in collegial governance is 'a working condition profoundly distinct from the conditions of other employees,' *Carl Sandburg II*, 7 PERI 2220 at IX-438. In some cases, the difference between those who participate in self-governance and others who do not may be overcome by other indicia of common interests. However, that is not the case here where the technical employees have little in common with the faculty and counselors.

Petitioners argue that tenure is similar to the requirement of just cause for termination. However, just cause, unlike tenure, is contractually based and defined. In addition, both in *Carl Sandburg II* and here, other faculty participate in deciding whether a faculty member will receive tenure. In both cases, therefore, tenure decisions are examples of faculty participation in employment decisions affecting the bargaining unit. This participation creates a 'fundamentally different' employment relationship for nonfaculty and faculty employees, *Carl Sandburg II*, 7 PERI 1110 at IX-438. We conclude that *Carl Sandburg II* should not be overruled."

The Board's reliance upon its previous decision in *Carl Sandburg II* was ill-advised. Subsequent to the Board's decision in the present case, the Board's decision in *Sandburg II* was reversed by the appellate court, which held that the proposed unit in the petition to merge was appropriate. (*Sandburg Faculty Association v. Illinois Educational Labor Relations Board* (1993), 248 Ill. App. 3d 1028, 618 N.E.2d 989.) In *Sandburg*, the court stated:

"We also find that the Board improperly rejected the proposed

unit under the section 7 traditional community of interests standard.

\* \* \*

We recognize that, as a general rule, courts accord deference to the interpretation placed on a statute by the agency charged with its administration. *Decatur*, 122 Ill. 2d at 361; *University of Illinois*, 235 Ill. App. 3d at 721.

However, Section 7(a) of the Act sets out the factors to be considered in determining an appropriate unit and we find that the Board improperly placed undue emphasis on two 'working conditions'—the faculty's participation in the tenure process and participation in the College's decision-making process—to reach its decision.

Section 7(a) does not require that a proposed unit be the 'most appropriate unit'; rather, it designates that the unit be 'appropriate.' The statute requires that in determining the appropriateness of a unit, each case should be individually considered 'to ensure employees the fullest freedom' in exercising the rights guaranteed them under the Act. Ill. Rev. Stat. 1991, ch. 48, par. 1707.

The Board improperly and admittedly focused upon governance/collegiality and tenure while the facts and circumstances surrounding the other issues at this small community college clearly indicate that an identifiable community of interests exists, as viewed from the employees' perspective.

We believe that the Board placed undue emphasis upon those two factors such that all other factors failed to receive a balanced weighing in accordance with the goal of the statute—to ensure that employees receive the greatest freedom to exercise their rights under the Act, including the right to membership in a unit composed of both professionals and nonprofessionals. Ill. Rev. Stat. 1991, ch. 48, par. 1707.

Because we find the Board has misinterpreted the statute, we need not consider its decision as binding, and find that there exists a community of interest such that the proposed unit is appropriate." 248 Ill. App. 3d at 1034-36, 618 N.E.2d at 993-95.

Likewise, we conclude that the Board in the present case improperly and admittedly focused upon collegial governance and tenure while all the facts and circumstances surrounding the other issues clearly demonstrate that a sufficient community of interest exists between PRO/TECH and TEACHERS employees so that the employees themselves should be able to choose in an election whether they should merge into a single unit within the labor union. If the Board had not focused upon collegial governance and tenure but instead considered all of the factors set forth in section 7(a) of the

Act to determine whether a sufficient community of interest exists, its decision would and should have been different. We parenthetically note that although collegial governance and tenure may be properly considered under "working conditions," neither collegial governance nor tenure is specifically mentioned in section 7(a) as a factor to be considered under the community of interest standard.

■ Among the specific factors to be considered under the community of interest standard are the employee skills and functions, degree of functional integration, interchangeability and contact among employees, common supervision, wages, hours, other working conditions, and the desires of the employees involved. (115 ILCS 5/7(a) (West 1992).) Here, this is a small community college which employs about 750 employees. PRO/TECH has about 45 employees and TEACHERS has about 165 employees, all of whom belong to the same union. The overall goal of the PRO/TECH and TEACHERS employees is to educate the students of the College.

While the respective specific skills of the members of PRO/TECH and TEACHERS may be different, their general skills and functions are not dissimilar. Moreover, there is some overlapping. About four of the employees in PRO/TECH perform teaching duties. A number of others in PRO/TECH perform related duties such as counseling students who are having difficulties in class, assisting students in job placement, assisting students needing to transfer classes, administering tests, supervising the English as a Second Language Program, designing the presentation of materials in class, and coordinating student financial aid.

The vast majority of the employees in PRO/TECH are professional employees and the employees in TEACHERS are professional employees. A majority of the employees in both units hold at least a bachelor's degree. There is also a strong degree of functional integration among employees in the two units. In some instances, the duties performed by PRO/TECH employees provide support to the TEACHERS employees without which the TEACHERS employees could not perform their jobs. Two PRO/TECH employees, the studies skills specialist and the tutor coordinator, teach the same studies skills class that is taught by a full-time faculty employee member of TEACHERS. Some PRO/TECH employees assist faculty employees who are members of TEACHERS in the presentation of ideas in the classrooms, administering tests, counselling students regarding transfers among classes, working with the student-teachers, and performing a number of other tasks that involve interaction with faculty members. There is plainly much contact among PRO/TECH and TEACHERS employees.

Moreover, some PRO/TECH and TEACHERS employees have interchangeability. Some PRO/TECH employees, like TEACHERS employees, counsel students. Also, PRO/TECH and TEACHERS employees serve side-by-side on faculty senate committees. In addition, in some instances PRO/TECH and TEACHERS share common supervision. There are also some similarities between the two units with regard to wages and hours. Employees for both units are paid salaries according to salary schedules set forth in their collective bargaining agreements; these same salary schedules can easily be maintained under a unified bargaining unit. Both collective bargaining agreements contain different provisions for 9-month employees and for 12-month employees. Under both agreements, 9-month employees are paid step increases at the beginning of an academic year while 12-month employees are paid step increases at the beginning of a fiscal year. Both PRO/TECH and TEACHERS employees are paid twice a month.

While most of the TEACHERS employees work nine months a year, four or five on them work 12 months a year. While most of the PRO/TECH employees work 12 months a year, two of them work 10 months a year. While most of the TEACHERS employees work 32 hours a week, about seven of them, including counselors and librarians, work a 37½-hour week. PRO/TECH employees, like the counselors and librarians, work a 37½-hour week.

In addition, the working conditions at the College for the PRO/TECH and TEACHERS employees appear similar. Both work on campus, and both receive group hospital and major medical insurance, life insurance, long-term disability insurance, as well as dental insurance. Also, they both receive tuition waivers for themselves, their spouses, and dependent children for courses in which they enroll at the College. They also both receive travel expenses at the prevailing rate when traveling on College business. The employee leave provisions, e.g., maternity leave, sick days, bereavement days, are also virtually identical for PRO/TECH and TEACHERS employees. Rather than taking into consideration all of these similarities between PRO/TECH and TEACHERS, the Board focused on the few differences in reaching its decision.

Moreover, another factor to be considered is the desires of the employees. Here, both PRO/TECH and TEACHERS have joined in the appeal to challenge the Board's ruling that they do not share a community of interest. Also, the evidence at the hearing manifests that both groups of employees desire to merge. The desires of the employees are an important consideration because the goal in determining the appropriateness of a bargaining unit is to ensure employees

the fullest freedom in exercising the rights guaranteed by the Act for the purpose of collective bargaining. 115 ILCS 5/7(a) (West 1992).

In order to carry out this goal, when, as in the present case, it is clear that the employees in two units desire to merge, the Board should focus on the similarities rather than the differences within the factors that are considered. Section 7(a) does not require that a proposed unit be the most appropriate unit. Rather, it merely requires that the unit be appropriate. (*Sandburg Faculty Association*, 248 Ill. App. 3d at 1036, 618 N.E.2d at 995.) Nevertheless, the Board in the present case focused on the differences rather than the similarities between the members of PRO/TECH and TEACHERS, and the Board apparently looked for what it believed the most appropriate unit rather than an appropriate unit. In doing so, its decision disregarded the desires of the employees and what section 7(a) states.

Under the circumstances, we conclude that there is a sufficient community of interest between the PRO/TECH and TEACHERS employees so that, if they choose to merge, the merger would form an appropriate bargaining unit for the employees. The Board's decision that the petitioned-for unit is not an appropriate unit is erroneous in law because it misapplies section 7(a) of the Act, and erroneous in fact because it is against the manifest weight of the evidence. See *Sandburg Faculty Association*, 248 Ill. App. 3d 1028, 618 N.E.2d 989.

Accordingly, the Board's ruling that section 7(d) of the Act does not bar the petition for self-determination is affirmed. The Board's ruling that the petitioned-for unit is not an appropriate bargaining unit is reversed. The case is remanded to the Board with directions to hold an election as requested by the petition and for such further proceedings as the Board may determine consistent with this opinion.

Affirmed in part; reversed in part and remanded.

GREIMAN, P.J., and TULLY, J., concur.