# Illinois Official Reports

## Appellate Court

*Board of Trustees of the University of Illinois v.*
*Illinois Educational Labor Relations Board*, 2015 IL App (4th) 140557

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and THE UNI FACULTY ORGANIZATION, IEA-NEA, Respondents.–THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD; THE CAMPUS FACULTY ASSOCIATION (CFA), AFT-IFT; and AAUP, Respondents. |
| District & No. | Fourth District<br>Docket Nos. 4-14-0557, 4-14-0635 cons. |
| Rule 23 Order filed | January 20, 2015 |
| Rule 23 Order withdrawn | February 25, 2015 |
| Opinion filed | February 25, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed the finding of the Illinois Educational Labor Relations Board, in a consolidated appeal arising from a request of the Board of Trustees of the University of Illinois for direct administrative review of two decisions of the Illinois Educational Labor Relations Board, namely, the certification of the exclusive collective bargaining representative for the high school teachers at the University of Illinois Laboratory High School based on the finding that the union presented clear and convincing evidence that the proposed unit would be appropriate under section 7 of the Illinois |

Educational Labor Relations Act, that special circumstances and compelling justifications made it appropriate to recognize the proposed bargaining unit and that the proposed unit would not cause undue fragmentation or a proliferation of bargaining units, and the certification of the exclusive collective-bargaining unit for nontenure-track faculty members who teach or do research at the university based on the conclusion that the bargaining unit was inappropriate because it did not include the teachers in the high school, since there was no definite and firm conviction that the Board erred with regard to the high school, and the University's arguments with respect to the nontenure-track faculty members had to fail.

| | |
|---|---|
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board. Nos. 13-RC-0008-S, 14-RC-0012-S |
| | |
| Judgment | No. 4-14-0557, Affirmed.<br>No. 4-14-0635, Affirmed. |
| | |
| Counsel on Appeal | James J. Powers (argued) and R. Theodore Clark, Jr., both of Clark Baird Smith LLP, of Rosemont, for petitioner. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board. |
| | |
| | Ronald G. Stradt (argued), of Illinois Education Association, of Springfield, for respondents Uni Faculty Organization, Illinois Education Association, and National Education Association. |
| | |
| | Margaret Angelucci, of Asher, Gittler & D'Alba, Ltd., of Chicago, for other respondents. |

Panel          PRESIDING JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Knecht and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1      This consolidated appeal arises out of the request of petitioner the Board of Trustees of the University of Illinois (University) for direct administrative review of two decisions of respondent, the Illinois Educational Labor Relations Board (Board).

¶ 2      In case No. 4-14-0557, the University appeals the Board's certification of respondents, the Uni Faculty Organization, the Illinois Education Association (IEA), and the National Education Association (NEA) (collectively, the Union) as the exclusive collective-bargaining representative for 34 high school teachers working at the University of Illinois Laboratory High School (Uni High) (underlying case No. 13-RC-0008-S). The University argues the Board erred in finding the Union presented clear and convincing evidence demonstrating (1) the proposed unit would be appropriate under section 7 of the Illinois Educational Labor Relations Act (Education Labor Act) (115 ILCS 5/7 (West 2012)), (2) special circumstances and compelling justifications made it appropriate to recognize the proposed bargaining unit, and (3) the proposed bargaining unit would not cause undue fragmentation or a proliferation of bargaining units.

¶ 3      In case No. 4-14-0635, the University appeals the Board's certification of respondents, the Campus Faculty Association (CFA), the American Federation of Teachers Illinois (AFT), the Illinois Federation of Teachers (IFT), and the American Association of University Professors (AAUP) (collectively, the Union) as the exclusive collective-bargaining unit for approximately 470 nontenure-track faculty members who teach or conduct research at the University (underlying case No. 14-RC-0012-S). The University argues because the bargaining-unit certification in case No. 13-RC-0008-S was erroneous, the bargaining unit for the nontenure-track faculty in case No. 14-RC-0012-S must be deemed inappropriate to the extent it does not include (but should include) the Uni High teachers. We affirm.

¶ 4                     I. BACKGROUND

¶ 5      On May 21, 2013, the Union filed a majority-interest petition, seeking to represent "all full-time and regularly employed part-time teaching associates at [Uni High]" (case No. 13-RC-0008-S (the Uni High case)). Uni High is a public laboratory high school and an educational unit of the University. The high school building and facilities are located on the University's campus. Uni High is comprised of approximately 325 students in grades 8 through 12. Some of the students are as young as 11 years old because they have skipped grades. The students, whose average American College Testing (ACT) scores exceed those of the University's incoming freshmen, are considered exceptionally bright. In addition to their high school studies, the students are permitted to take college courses at the University in their free time. Uni High employs between 45 and 50 employees, including the 34 teaching associates at issue in this case. Most of the Uni High teachers possess master's degrees and Ph.Ds.

¶ 6    The University objected to the Union's petition, arguing, *inter alia*, the proposed bargaining unit was inappropriately narrow because the Uni High teaching associates were a small subset of the University's nontenured faculty members and the petition did not seek to include all nontenured faculty members. The University maintained the Uni High teachers were no different than the other nontenured University faculty members and there was no reason to place them into their own bargaining unit.

¶ 7    The Board's rules establish "presumptively appropriate" bargaining units at the University's Urbana-Champaign campus. 13 Ill. Reg. 14969 (eff. Sept. 8, 1989). Those units are presumed to be appropriate for purposes of collective bargaining within the meaning of section 7 of the Education Labor Act (115 ILCS 5/7 (West 2012)). See 80 Ill. Adm. Code 1135.20(a) (2014). It is undisputed the petitioned-for bargaining unit of Uni High teachers was not one of those presumptively appropriate units.

¶ 8    To represent employees who are not included in one of the presumptively appropriate units, a labor organization must meet the requirements of section 1135.30 of the Board's rules. Section 1135.30 requires the labor organization to prove by clear and convincing evidence the proposed bargaining unit (1) is otherwise appropriate within the meaning of section 7 of the Education Labor Act, (2) is warranted by special circumstances and compelling justifications, and (3) will not result in undue fragmentation of the University's workforce. 80 Ill. Adm. Code 1135.30(a) (2004).

¶ 9    In December 2013, a two-day hearing was held before the Board's administrative law judge (ALJ) on the Union's petition.

¶ 10    Jeffrey Walkington, the director of Uni High, testified for the University. According to Walkington, a Uni High teaching associate's primary job duty is to teach. The full-time teaching associates teach four classes per semester. Those four classes meet every day. There is a fall and a spring semester each year. The State Board of Education requires students to be supervised for 300 minutes per day. Walkington testified part-time teaching associates are defined as teachers who teach fewer than four classes. Their pay is prorated by how many classes they teach. Teachers are free to leave between classes and to leave for the day after their last class. Teachers are assigned three- to four-week shifts of hallway duty during lunch to supervise the students. These assignments are voluntary and compensated. Teachers are not required to stay in the building during the school day when they are not teaching. Most teachers have individual offices in the Uni High facility or in an adjacent building. Walkington testified there are no strict rules regarding office hours.

¶ 11    Walkington testified Uni High's organizational structure is "divided into eight or nine academic departments and guidance counseling and [it is] what you would expect, foreign language, computer science, math, English, social studies, science, those types of things." Executive teachers function as department heads. Each department has one department head. They are "largely responsible for [the] evaluation of their own teachers, bringing to the attention of teachers professional development opportunities, [and] new teaching strategies." They also control their own budgets. However, they do not have complete autonomy over developing policies for their department. The executive teachers do not receive any additional pay. Instead, they have a slightly reduced workload of three classes per semester. A teacher's other duties could include "anything from" outreach to another school, participation in professional organizations, and coaching, to research and publishing. Parent-teacher conferences are also required.

¶ 12        Keith Marshall, the associate provost who oversees Director Walkington, testified for the University. Marshall testified there are 1,100 nontenure-track faculty members at the University. Their primary responsibility is teaching. Uni High employs 34 nontenure-track teaching associates. Marshall testified, "a significant portion of [Uni High's] budget is from general state aid, which is provided by the Illinois State Board of Education annually, based on a, a formula that provides the per pupil allocation that, that applies to all high schools in the State of Illinois, not just Uni High."

¶ 13        Karen McLaughlin, the assistant director of labor and employee relations for academic human resources, testified for the University. McLaughlin testified Uni High teaching associates are paid out of what are called "soft funds." As a result, they do not have any notice rights regarding whether their appointments are going to be renewed for another year. Other nontenured teaching faculty members at the University are paid from "hard funds" and are entitled to notice as a result. McLaughlin testified Uni High teachers' pay is based on their degree and number of years of experience. The minimum salary for a full-time academic position is $30,074. The annual salary increases for Uni High teaching associates are merit based, discretionary, and based on the University's campus-salary program set by the provost. According to McLaughlin's testimony, the Uni High teachers' salaries matched the campus-salary program for the past three years.

¶ 14        McLaughlin also testified Uni High teaching associates are subject to the same academic handbook as other nontenured faculty members. They are subject to the same policies and procedures as other nontenured faculty members. The Uni High teachers are eligible for the same health insurance and workers' compensation benefits as the rest of the nontenured workforce. Uni High teaching associates, like the other nontenure-track teachers, are not eligible for tenure. Vacation, bereavement, and sick leave for teaching associates is the same as for other nontenure-track employees. The Uni High faculty-advisory committee handles complaints and provides a dispute-resolution procedure for Uni High teachers.

¶ 15        Suzanne Linder, a Uni High teaching associate for 16 years, testified for the Union. In her experience, "teaching high school is radically different from teaching college," and the working conditions are not the same as for others teaching at the University. Uni High students range from 11 to 18 years old. "[A]t the sub-freshman level [they have] some pretty small immature kids who need a decent amount of hand holding." Linder teaches four classes a day, has student contact outside the classroom, and supervises a peer-tutoring center. Linder testified when she is not teaching she is usually in her office. In addition to parent-teacher conferences, Linder sends weekly progress reports to some parents. She also regularly answers e-mails from parents requesting information about grades and progress. Linder also testified, "[t]he University starts later and ends earlier than we do because they don't have the obligation [Uni High does] to have 180 school days." While Linder is evaluated every three years due to her experience, new teachers are observed and evaluated every year. Other than the Uni High teachers, Linder does not have any interaction with other nontenure-track faculty within the University. Linder testified Uni High teachers are not the same as people who are teaching at the University. According to Linder:

            "[W]e have more school days. We have longer school days. We teach every day. We deal with 11 year olds. We have more contact with parents. We have more supervisor responsibilities. We are teaching a younger curriculum that requires a different kind of pedagogy. It's a different job teaching high school than it is teaching college."

¶ 16    Eugene Bild, a Uni High teacher since 1993, testified he teaches four classes a day and usually sees two or more students outside of class each day. He testified he also writes eight student progress reports a week. In addition to parent-teacher conferences, he meets with parents "quite often." Bild testified, while classes are held from 8 a.m. to 4 p.m., as "any high school teacher would tell you," the hours go "much beyond that." Bild testified he "often start[s] work as early as 5:30 in the morning" and "can leave well after dark" and still bring work home. Bild considers himself a high school teacher and not a University faculty member. According to Bild, the teachers had been told by the Uni High director they were not faculty members and they should not refer to themselves as such. Bild reports to the executive teacher of his department and not to anyone outside Uni High.

¶ 17    When asked whether Uni High teachers should have their own bargaining group, Bild answered:

> "[I]f we were a part of a larger group of non-tenured track faculty, those interests of ours, those things that we need that are unique to Uni High and which are not basically concerns of the several thousand non-tenured track people would be subsumed. *** [T]here's roughly 33 of us [Uni High teachers] and if we were part of a larger group of, I think that there's more than a thousand, I'm thinking even 2,000 non-tenured track people, for us to try to get some of our concerns across or negotiated or made contractual, may be pretty difficult, if not impossible."

¶ 18    William Sutton, a Uni High teacher for 22 years, testified, "having taught at the University, having been a student at the [U]niversity, having taught as a [teaching assistant] and as a visiting assistant professor, having [become] intimately acquainted with the workings of the [U]niversity," "what we do at Uni [High] is absolutely unique." While the students are bright, "their social maturity is all over the map." Sutton has contact with parents on a regular basis, which never happened when he taught at the University. While Sutton attends regular Uni High faculty meetings, he does not attend any University faculty meetings. According to Sutton, "a union that represents the Uni [High] teachers is absolutely essential. Otherwise *** the unique issues that we have will be so diluted and if we're in an organization of people whose businesses are just light years removed from ours, it'll be pointless for us."

¶ 19    Janet Morford, a Uni High teacher since 2006, teaches "sub-freshmen," or eighth-graders, who range from 11 to 14 years old. Morford testified Uni High teachers stand *in loco parentis* status to their students and are also mandated reporters of suspected abuse. Morford did not recall a similar responsibility when teaching at the college level. A Uni High teacher cannot cancel a class. Instead, the teacher must get a substitute from an approved list. Morford testified she does not report to anyone outside Uni High. Morford believes, "the purpose of [a] union is to defend the interest[s] of a group of people who have common working conditions. And our working conditions at the University are so different from [the] working conditions of other people on campus." According to Morford, so much of their everyday experience would not make any sense to other nontenured faculty members. As a result, Morford opined, "our interests would only be representative [*sic*] as a separate unit."

¶ 20    On February 14, 2014, the Board's ALJ issued her recommended decision and order, finding the proposed unit was appropriate and recommending the Board certify the Union as the exclusive bargaining representative for Uni High.

¶ 21    On March 6, 2014, the University filed its exceptions to the ALJ's decision, arguing, *inter alia*, the ALJ erred in concluding the Union proved by clear and convincing evidence the proposed bargaining unit was appropriate.

¶ 22    On May 14, 2014, the Union filed a second petition, seeking to represent "[a]ll full time *** non-tenure-track faculty with respect to educational employees employed at the [University]" (No. 14-RC-0012-S (the CFA case)).

¶ 23    On May 15, 2014, the Board issued an order affirming the ALJ's decision in the Uni High case (No. 13-RC-0008-S) and directing certification of the bargaining unit.

¶ 24    On June 13, 2014, the University filed its petition for direct administrative review of the Board's decision of the Uni High case (No. 13-RC-0008-S). That case was docketed as appellate court case No. 4-14-0557.

¶ 25    During the June 25, 2014, hearing on the Union's second petition in the CFA case (No. 14-RC-0012-S), the University argued the petitioned-for bargaining unit was inappropriate to the extent it excluded the Uni High teachers. The University maintained the ranks of the nontenured teachers should not be fragmented in this manner. The Union argued the Board lacked jurisdiction to consider including the Uni High teachers in the proposed unit because it had already certified the Uni High bargaining unit in the Uni High case (No. 13-RC-0008-S).

¶ 26    In a July 2, 2014, order, the Board's ALJ declined to consider whether the Uni High teachers should be included in the Union's proposed bargaining unit in the CFA case (No. 14-RC-0012-S) because the University had already appealed the Board's decision to certify the bargaining unit in the Uni High case to this court.

¶ 27    On July 8, 2014, in the CFA case, the Board certified the Union as the exclusive collective-bargaining representative for approximately 470 nontenure-track faculty members teaching or researching at the University's Urbana-Champaign campus. The Uni High teachers were excluded from this bargaining unit.

¶ 28    On July 11, 2014, the University filed its petition for direct administrative review of the Board's decision in the CFA case (No. 14-RC-0012-S). That case was docketed as appellate court case No. 4-14-0635.

¶ 29    On July 31, 2014, the University filed a motion to consolidate the two cases, which we granted on August 12, 2014.

¶ 30    This appeal followed.

¶ 31                                II. ANALYSIS
¶ 32                        A. The Uni High Case (No. 4-14-0557)
¶ 33    On appeal, in case No. 4-14-0557, the University argues the Board erred in finding clear and convincing evidence was presented to demonstrate the proposed bargaining unit of Uni High teachers would (1) be appropriate under section 7 of the Education Labor Act, (2) be appropriate given the special circumstances and compelling justifications involved, and (3) not cause undue fragmentation or a proliferation of bargaining units.

¶ 34    Judicial review of an administrative agency action extends to all questions of law and fact in the record. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507, 554 N.E.2d 155, 159 (1990). An administrative agency's findings on questions of fact will be reversed only if they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018

(2008). An agency's decision on a question of law is reviewed *de novo*. *Cinkus*, 228 Ill. 2d at 211, 886 N.E.2d at 1018. An agency's application of a rule of law to established facts is a mixed question of fact and law that will not be reversed unless it is deemed clearly erroneous. *Cinkus*, 228 Ill. 2d at 211, 886 N.E.2d at 1018.

¶ 35    Here, the University does not challenge the Board's factual findings. Instead, the University argues the Board erred in interpreting its regulations and applying those regulations to the facts of this case. This inquiry presents a mixed question of law and fact. See *Illinois Council of Police v. Illinois Labor Relations Board, Local Panel*, 404 Ill. App. 3d 589, 594, 936 N.E.2d 1212, 1217 (2010). As such, the clearly erroneous standard of review applies in this case. The clearly erroneous standard of review is highly deferential to an agency's decision. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 281 (2001). A decision is clearly erroneous only if the reviewing court is left with a " ' "definite and firm conviction that a mistake has been committed." ' " *Cinkus*, 228 Ill. 2d at 211, 886 N.E.2d at 1018 (quoting *AFM Messenger Service*, 198 Ill. 2d at 395, 763 N.E.2d at 282, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 36    As previously stated, the Board's regulations create presumptive bargaining units. 80 Ill. Adm. Code 1135.20 (2014). The parties agree the proposed Uni High bargaining unit was not one of the presumptive units. The parties also agree the Board's regulations allow for the certification of a nonpresumptive bargaining unit if the petitioner can show by clear and convincing evidence (1) the unit is otherwise appropriate under section 7 of the Education Labor Act, (2) special circumstances and compelling justifications make it appropriate for the Board to recognize a nonpresumptive unit, and (3) establishing the proposed unit will not cause undue fragmentation or proliferation of bargaining units. 80 Ill. Adm. Code 1135.30 (2004). "Clear and convincing evidence" means evidence greater than a preponderance of the evidence but not quite as high as the evidence necessary for a criminal conviction. *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995).

¶ 37    The Union argues the Board's decision to certify the Uni High bargaining unit was not clearly erroneous. In doing so, however, it additionally contends "section 1135.30 of the Illinois Administrative Code violates the Equal Protection Clause of the Constitution of the State of Illinois by subjecting similarly situated university employees to different rules when exercising their rights under the [Education Labor Act]." The Union specifically takes issue with its burden of having to demonstrate clear and convincing evidence before the Board.

¶ 38    However, the Union prevailed and did not file a cross-appeal as required by Rule 303(a)(3). See Ill. S. Ct. R. 303(a)(3) (eff. May 30, 2008). "Appellees may not argue alleged errors unless they timely file a cross-appeal." *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 927 (2009). "When an appellee does not file a cross-appeal, the reviewing court is confined to the issues presented by the appellant." *Martis*, 388 Ill. App. 3d at 1024, 905 N.E.2d at 927. As a result, we do not address the Union's argument.

¶ 39                                          1. *Appropriateness Under Section 7(a)*

¶ 40    The first factor in the Board's regulations for determining whether a proposed nonpresumptive bargaining unit should be certified is whether the unit is "otherwise appropriate" under section 7(a) of the Education Labor Act. 80 Ill. Adm. Code 1135.30(a)(1) (2004). Section 7(a) requires only that the bargaining unit be appropriate and does not require a

petitioned-for unit be the most appropriate unit. *Black Hawk College Professional Technical Unit v. Illinois Educational Labor Relations Board*, 275 Ill. App. 3d 189, 196, 655 N.E.2d 1054, 1059 (1995); *Sandburg Faculty Ass'n v. Illinois Educational Labor Relations Board*, 248 Ill. App. 3d 1028, 1036, 618 N.E.2d 989, 995 (1993) (Education Labor Act "does not require that a proposed [bargaining] unit be the 'most appropriate unit'; rather, it designates that the unit be 'appropriate' "). "A proposed unit should be certified if it meets the applicable standards in the [Education Labor] Act, even though a separate unit of classified employees would also be an appropriate unit." *Sandburg Faculty Ass'n*, 248 Ill. App. 3d at 1039, 618 N.E.2d at 997. "However, a bargaining unit will not be appropriate if, under all of the circumstances, it is artificial or arbitrary." *SEDOL Teachers Union v. Illinois Educational Labor Relations Board*, 276 Ill. App. 3d 872, 883, 658 N.E.2d 1364, 1371 (1995).

¶ 41       Section 7(a) sets forth several factors for the Board to consider in determining whether a proposed bargaining unit is appropriate. 115 ILCS 5/7(a) (West 2012). Specifically, section 7(a) provides, in relevant part, the following:

> "In determining the appropriateness of a unit, the Board shall decide in each case, in order to ensure employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as historical pattern of recognition, community of interest, including employee skills and functions, degree of functional integration, interchangeability and contact among employees, common supervision, wages, hours and other working conditions of the employees involved, and the desires of the employees." 115 ILCS 5/7(a) (West 2012).

Pursuant to the clear language of section 7(a), the Board is required to make its determination on a case-by-case basis. 115 ILCS 5/7(a) (West 2012) ("the Board shall decide in each case").

¶ 42       In this case, the proposed unit is neither arbitrary nor artificial. The unit is comprised of 34 Uni High teaching associates who share "a substantial community of interest with each other." The evidence presented supports the Board's finding.

¶ 43       The Uni High teachers all share the same skills and functions, *i.e.*, they all teach high school students. They all work in the same building and have frequent contact with both students and their parents outside of the classroom. They also report to their department heads at Uni High and not to anyone at the University. They are interchangeable in the sense they cover classes for one another and share student-supervision duties throughout the year. The Uni High teachers do not share these factors with the rest of the nontenured teachers at the University. For example, the University's other faculty members do not teach high school, have a shorter school year, and do not teach every day. Further, it is undisputed a majority of Uni High teachers favor representation by the proposed bargaining unit. "The desires of the employees are an important consideration because the goal in determining the appropriateness of a bargaining unit is to ensure employees the fullest freedom in exercising the rights guaranteed by the [Education Labor] Act for the purpose of collective bargaining." *Black Hawk College Professional Technical Unit*, 275 Ill. App. 3d at 198-99, 655 N.E.2d at 1060. This factor supports the Board's conclusion. We cannot say the Board's determination the proposed bargaining unit was otherwise appropriate under section 7 was clearly erroneous.

¶ 44                              2. *Special Circumstances and Compelling Justifications*

¶ 45        The second factor for determining whether a proposed nonpresumptive bargaining unit should be certified is whether "special circumstances and compelling justifications" existed to recognize the proposed bargaining unit. 80 Ill. Adm. Code 1135.30(a)(2) (2004).

¶ 46        The Education Labor Act does not define "special circumstances and compelling justifications." However, the Board has explained, "[r]ather than attempt to provide an all-encompassing definition, we prefer to define this phrase on a case-by-case basis. This phrase was intentionally drafted in broad terms to enhance its utility, since we cannot predict all future unit descriptions and situations that may be presented by petitions." *University of Illinois at Chicago*, 6 PERI ¶ 1126 (IELRB 1990).

¶ 47        In this case, the Board found the following:

> "There is also clear and convincing evidence of special circumstances and compelling justifications that make it appropriate for the [Board] to establish a bargaining unit different from the presumptively appropriate bargaining units. [Uni High] is a public high school which is separate and distinct from [the University's] other functions, as is reflected in the fact that [Uni High] is primarily funded like a public high school, instead of being funded in the same manner as the rest of [the University]. [Uni High] operates under a high school calendar and high school daily hours. [Uni High] teaching associates provide a high school education, rather than the higher education provided by other [University] employees who are classified as nontenure-track faculty. *** [I]t is the function of [Uni High] teaching associates as high school teachers, rather than their technical classification as nontenure-track faculty, that is determinative. This difference in function, as well as the distinctive nature of [Uni High], is a special circumstance and compelling justification warranting placement of [Uni High] teaching associates in a bargaining unit that does not include other employees who are classified as nontenure-track faculty."

¶ 48        The record in this case supports the Board's findings. It is clear Uni High is a separate and distinct entity. Uni High teachers have unique conditions of employment and perform distinctly different job duties from those of the University's other nontenure-track teaching faculty. As a result, their interests are distinct from those of other University faculty members. This fact presents a compelling need for their own separate bargaining unit to represent their separate and unique interests. The Board's determination regarding the second factor was not clearly erroneous.

¶ 49        The University infers the Board erred when it stated no other petitions seeking to represent the Uni High teachers were pending at the time of its March 15, 2014, decision. While the Union filed a petition on March 14, 2014, seeking to represent "[a]ll full time *** non-tenure track faculty with respect to educational employees employed at the [University]," the Union has stated on appeal it did not seek to represent the Uni High teachers in its second petition, as the Board's ALJ had already issued her recommended decision finding the proposed bargaining unit for the Uni High teachers was appropriate. The Board issued its decision the day after the Union filed its second petition.

¶ 50        Regardless, the Board stated the absence of another petition was not sufficient to demonstrate special circumstances and compelling justifications. Thus, the Board's belief there were no other pending petitions seeking to represent nontenure-track faculty was only a factor toward establishing the special-circumstances-and-compelling-justification

requirement, not the deciding factor. Accordingly, the Board's statement, while not technically correct at the time it was made, is not fatal to the Board's overall conclusion with regard to this factor.

¶ 51 The University also argues the Board's conclusion with regard to this factor is contrary to precedent set in other Board decisions. The University contends the Board is required to follow its own precedent. While administrative agencies are bound to follow their own administrative rules, they are not absolutely bound by their prior rulings. *Springwood Associates v. Health Facilities Planning Board*, 269 Ill. App. 3d 944, 948, 646 N.E.2d 1374, 1376 (1995); *Citizens Utilities Co. of Illinois v. Illinois Commerce Comm'n*, 153 Ill. App. 3d 28, 32, 504 N.E.2d 1367, 1370 (1987) (agency may make adjustments to its precedents "if the adjustments are not arbitrary or capricious").

¶ 52 Here, the University emphasizes the significance of the Board's decision in a case involving the University's McKinley Health Center. See *Board of Trustees of the University of Illinois*, 2 PERI ¶ 1115 (IELRB 1986) (reversed by an unpublished decision of the IELRB in 1990). However, in finding a proposed bargaining unit proved appropriate under section 7(a) by clear and convincing evidence, the Board is required to make its determination on a case-by-case basis as provided by section 7(a) (115 ILCS 5/7(a) (West 2012)). Thus, prior cases are not dispositive of this case. Moreover, *Board of Trustees* is distinguishable from the instant matter.

¶ 53 In *Board of Trustees*, the Board declined to certify a proposed bargaining unit for a group of approximately 18 staff physicians who belonged to a larger group of 1,000 academic professionals at the University. In her recommended decision, the ALJ found the proposed bargaining appropriate. While the petition was still pending before the Board, the rules establishing "presumptively appropriate" bargaining units found in section 1135.20(a) were adopted. The Board issued an order to show cause why the petition should not be dismissed in light of the section 1135.30 requirement to demonstrate special circumstances and compelling justifications. *Board of Trustees*, 2 PERI ¶ 1115.

¶ 54 The petitioner did not respond and the petition was dismissed as not in conformity with the presumptively appropriate bargaining units and no evidence was presented to justify deviation from those bargaining units. *Board of Trustees*, 2 PERI ¶ 1115. Thus, no specific finding was ever made by the Board the proposed bargaining unit was inappropriately narrow. As such, *Board of Trustees* affords no precedential value in this case. Here, the Board correctly noted, in addressing the *Board of Trustees* decision, it could not "draw any conclusion as to what the [Board] would have decided" because the petitioner in that case in did not respond to the rule to show cause.

¶ 55                                      3. *Undue Fragmentation*

¶ 56 The final section 1135.30(a) factor for consideration is whether recognition of the proposed nonpresumptive bargaining unit would cause undue fragmentation or a proliferation of bargaining units. According to the Board's regulations, undue fragmentation and proliferation of bargaining units:

> "means that the number of bargaining units is such as to threaten to interrupt services, cause labor instability, and cause continual collective bargaining and a multitude of representation proceedings." 80 Ill. Adm. Code 1135.30(a)(3) (2004).

¶ 57     In this case, the Board found "[b]ecause [Uni High] is a public high school which functions separately from [the University's] other operations, certification of a bargaining unit limited to [Uni High's] teaching associates will not threaten to interrupt [the University's] other services or cause labor instabilities." The Board concluded, "Any labor dispute would physically and otherwise be limited to [Uni High]."

¶ 58     The University argues the Board erred because certification of the Uni High teachers will cause fragmentation of the University's workforce and labor instability throughout the University. However, the University's contention certification of the Uni High bargaining unit would lead the University's other departments, "like Physics, English, Mathematics[,] or Astronomy," to petition for their own separate bargaining units is speculative at best. This speculation is insufficient to conclude the Board's finding was clearly erroneous. Moreover, the differences between the Uni High teachers and the rest of the University's nontenure-track teaching faculty members are more apparent in this record than are those among the nontenure-track teaching faculty comprising the University's other departments.

¶ 59     The evidence presented also demonstrates Uni High operates as its own entity, separate and away from the University's other operations. Thus, certification of the 34 Uni High teachers into their own bargaining unit would not likely cause such labor instability as to disrupt the rest of the University's other services in the event of a dispute. As a result, we are unpersuaded by the University's argument in this regard. The Board's determination as to the third factor was not clearly erroneous.

¶ 60     In sum, the Board's decision clear and convincing evidence of each of the above discussed factors was presented to support recognition of the nonpresumptive bargaining unit of Uni High teachers was not clearly erroneous, *i.e.*, we are not left with a definite and firm conviction the Board erred.

¶ 61                         B. The CFA Case (No. 4-14-0635)

¶ 62     The University's argument in appeal No. 4-14-0635 is predicated on our finding the Board erred in certifying the Uni High bargaining unit in appeal No. 4-14-0557. Specifically, the University contends because the bargaining unit certification in the Uni High case was erroneous, the bargaining unit for the nontenure-track faculty in the CFA case must "be deemed inappropriate" to the extent it does not include the Uni High teachers. Because we have found in appeal No. 4-14-0557 the Board did not err in certifying Uni High's bargaining unit, the University's arguments in appeal No. 4-14-0635 must necessarily fail. See *Sandburg Faculty Ass'n*, 248 Ill. App. 3d at 1039, 618 N.E.2d at 997 (once an appropriate unit is established under section 7(a), any other units that may or might be appropriate are irrelevant).

¶ 63                                 III. CONCLUSION

¶ 64     For the reasons stated, we affirm the Board's judgment in case Nos. 4-14-0557 and 4-14-0635.

¶ 65     No. 4-14-0557, Affirmed.

¶ 66     No. 4-14-0635, Affirmed.